WILLIAM J. MARTIN, J., of the Carroll County Court of Common Pleas, sitting by assignment.

The STATE of Ohio, Appellee,

v.

CANTLEBARRY, Appellant.

[Cite as *State v. Cantlebarry* (1990), 69 Ohio App.3d 216.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1184.

Decided Aug. 28, 1990.

*Michael Miller,* Prosecuting Attorney, and *Katherine Press,* for appellee.
*James Kura,* County Public Defender, and *Paul Skendelas,* for appellant.

RICHARD N. KOEHLER, Judge.

This case is on appeal from a rape conviction in the Franklin County Court of Common Pleas whereby a jury found defendant, Richard L. Cantlebarry, guilty of engaging in fellatio with his stepson without the use of force.

On September 2, 1988, defendant was indicted on four counts of rape in violation to R.C. 2907.02. Counts 1 and 2 of the indictment alleged that defendant engaged in anal intercourse with this stepson on July 24, 1988,

while Counts 3 and 4 maintained that defendant engaged in fellatio with his stepson on August 14, 1988. All counts of this indictment alleged the use of force on a victim less than thirteen years of age.

The facts in this matter indicate that, on August 14, 1988, defendant slept in the bedroom of his stepson. Carol Cantlebarry, defendant's wife and the mother of the child, apparently observed defendant on a bed without clothing and lightly covered by a sheet. Defendant's nine-year-old stepson was leaning over the bed with his head in the vicinity of defendant's penis. Carol Cantlebarry, upon viewing this, struck defendant and called the police.

At trial, Carol Cantlebarry testified that she incorrectly concluded sexual activity had taken place between her son and defendant. The basis for her determination was an interview with her son prior to the police's arriving at the scene.[1]

The alleged child-victim was interviewed and examined by Dr. Mary K. Kuzma, a pediatrician from Children's Hospital. Although the physical examination was negative, Dr. Kuzma felt strongly that the child had been sexually abused based on the history provided by the child. Dr. Kuzma concluded that, as a result of her one-hour interview with the child, he was being truthful since children of his age were unlikely to fabricate such a story.[2]

On August 25, 1988, a jury returned a guilty verdict of rape with respect to Count 3 of the indictment, finding defendant did engage in fellatio with his

---

1. The court struck the testimony from Carol Cantlebarry elicited by the defense stating that the police officers on their arrival took the alleged child-victim and repeatedly told him that he had been raped by defendant.

2. Testimony elicited from the prosecution is as follows:
   "Q. In your experience, are children of the age eight apt to fabricate or lie about this?
   "A. No, they're not.
   "Q. In your opinion was Scott being truthful with you?
   "A. Yes, he was."
   The expert in this case was not a board-certified pediatrician, yet, she gave testimony concerning the psychological affinity of a child to fabricate a story. In addition, this expert provided conclusions which are unfounded by empirical and scientific evidence, holding that this child was "sexually abused" based solely on the child's own words. The Supreme Court in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, recently held that an expert witness is entitled to assist a trier of fact in the fact-finding process, but may not render opinions as to the veracity or credibility of a witness. In addition, the court further stated that an expert may not testify based solely on a victim's out-of-court statement that defendant was the perpetrator of the alleged sexual abuse. See, also, *State v. Davis* (1989), 64 Ohio App.3d 334, 581 N.E.2d 604.
   Although this issue was not assigned as error by defendant and is, therefore, not properly before us, we find such testimony highly prejudicial and improper. The Fourteenth Amendment to the United States Constitution requires the dictates of due process to be followed in a criminal prosecution; however, in this case, it seems to us that defendant's trial was patently unfair.

stepson without the use of force. The court subsequently imposed an indefinite sentence of incarceration between five and twenty-five years.

Defendant now brings the instant appeal setting forth the following assignments of error:

"I. The trial court erred in striking testimony relating to statements made by police officers on the grounds of hearsay, where the testimony was not offered to prove the truth of the matter asserted.

"II. The trial court erred in permitting the prosecutor to impeach the credibility of his own witness where the prosecutor knew or should have known that the witness intended to offer testimony favorable to the defense.

"III. Appellant was denied her [*sic*] right to a fair trial as a result of prosecutorial misconduct during closing arguments. The prosecutor made improper and highly prejudicial comments concerning defense counsel which affected the credibility of counsel."

■ Defendant, in his first assignment of error, asserts that the trial court erred by striking testimony related to statements made by police officers investigating the alleged rape on the grounds of hearsay. We agree.

Evid.R. 801(C) defines "hearsay" in the following manner:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Defendant's trial counsel, during cross-examination of Carol Cantlebarry, inquired into the events of August 14, 1988:

"Q. And you told the police to leave and they wouldn't leave; isn't that correct?

"A. Yeah, I told them that nothing had happened.

"Q. What did the police do?

"A. They took Scott in the other room and talked to Scott.

"Q. What did they tell him?

"A. All the way to the kitchen, they kept saying, 'He raped you. He raped you, didn't he? Didn't he rape you?' "

Unless otherwise provided by the Constitutions of the United States and the state of Ohio, other statutes, or rules, hearsay is not admissible at trial. Evid.R. 802.

■ Statements which are introduced for reasons other than proving the truth of the matter asserted are not hearsay and would, therefore, be admissible consistent with Evid.R. 403. *State v. Lewis* (1970), 22 Ohio St.2d

125, 133, 51 O.O.2d 209, 213, 258 N.E.2d 445, 450. For instance, statements which are verbal parts of acts are admissible. McCormick, Evidence (3 Ed. Clearly Ed.1984) 732, 733, Section 249; *State v. Blevins* (1987), 36 Ohio App.3d 147, 521 N.E.2d 1105.

■ Statements which are offered at trial to explain an officer's conduct while investigating a purported crime are not hearsay. *State v. Thomas* (1980), 61 Ohio St.2d 223, 232, 15 O.O.3d 234, 239, 400 N.E.2d 401, 407; *Blevins, supra.* This court in *Blevins*, 36 Ohio App.3d at 149, 521 N.E.2d at 1108, held:

" * * * [A] review of the relevant Ohio case law finds no specific standards for the admission of such statements. Accordingly, certain conditions should be met before the court admits statements which explain an officer's conduct during the course of a criminal investigation.

"The conduct to be explained should be relevant, equivocal and contemporaneous with the statements. 6 Wigmore, Evidence (Chadbourn Rev.Ed.1976) 267, 268, Section 1772. Additionally, such statements must meet the standards of Evid.R. 403(A)."

The statements elicited from Carol Cantlebarry in this instance were offered to show that a statement was in fact made by the investigating officer at the scene of the alleged rape. In fact, the out-of-court statements were not offered for their veracity, but, instead, to show the conduct of the officers at the scene of the alleged crime.

The statements, "He raped you. He raped you, didn't he? Didn't he rape you?", were not offered by defendant to establish the fact that a rape occurred. The testimony was introduced to indicate the leading and suggestive nature of the officers' statements. The defense maintained that this evidence concerning the conduct of the investigating officers was necessary and essential since the prosecution's entire case against defendant consisted of uncorroborated allegations from the child.

Further, the statements of the officers were made contemporaneously with the investigating efforts of the state and contained probative evidence consistent with Evid.R. 403(A). The testimony of Carol Cantlebarry merely described the investigative efforts of the officers at the scene with respect to her child. Therefore, the statements were clearly admissible and the exclusion thereof by the trial court constituted error.

■ The lack of physical evidence, the expert testimony based on the history supplied by the child and the initial perception of the child's mother, and the belief by the mother that no sexual activity had transpired between

defendant and alleged child-victim, renders the trial court's exclusion of this probative evidence prejudicial error.

Defendant's first assignment of error is well taken.

■ In the second assignment of error, defendant maintains that the trial court erred in allowing the prosecution to impeach his own witness when he knew the witness would offer testimony favorable to the defense.

Evid.R. 607 states:

"The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement *only upon a showing of surprise and affirmative damage.* This exception does not apply to statements admitted pursuant to Rules 801(D)(1)(A), 801(D)(2), or 803." (Emphasis added.)

The trial court declared Carol Cantlebarry, the mother of the alleged child-victim and wife of defendant, a "hostile witness" over objection of the defense. The court held that "surprise" and "sufficient damage" was established by the prosecution since the witness should have contacted the prosecutor regarding any changes in her story.

■ Evid.R. 607 requires "a showing of surprise and affirmative damage" prior to the court's declaring a witness "hostile." Surprise is shown when testimony of a witness is materially inconsistent with the prior written or oral statements, and counsel did not have reason to believe that the witness would recant when called upon to testify. *State v. Duffy* (1938), 134 Ohio St. 16, 11 O.O. 383, 15 N.E.2d 535; *State v. Reed* (1981), 65 Ohio St.2d 117, 19 O.O.3d 311, 418 N.E.2d 1359; *State v. Holmes* (1987), 30 Ohio St.3d 20, 30 OBR 27, 506 N.E.2d 204.

In the case *sub judice,* Carol Cantlebarry testified in response to a series of questions by the prosecution that she had been angry with defendant and simply jumped to an incorrect conclusion on August 14, 1988 concerning this alleged rape. She did not observe any contact between her child and defendant. Based upon a subsequent interview with her son, Carol Cantlebarry then testified that her prior statement and conclusion were unfounded. The following testimony clearly reveals that the prosecution knew that its leading witness would recant statements she initially made:

"MR. SHWARTZ: Did you question her before you put her on the stand?

"MR. BROWNING: Myron, she hasn't been willing to talk to me.

"MR. SHWARTZ: She's been here for two days waiting for you to talk to her. She would talk to you. Did you ask her then that—did she tell you she was mistaken? She told me that months ago.

"MR. BROWNING: And yesterday you said in chambers, well, she's going to say it was all a lie.

"MR. SHWARTZ: Well, sure, I told you that yesterday. You should have asked her that yesterday. It was all a mistake. I thought you questioned her. If you don't question your own witness and don't know whatever she's going to say—

"MR. BROWNING: The point is she walks into court and, no pun intended, I'm caught with my pants down.

"MR. SHWARTZ: Well, I know you should have questioned her before and prepared for her."

In addition, other testimony at trial indicated that Carol Cantlebarry informed the investigating officers, hospital workers, and family members that she had made a mistake concerning the events of August 14, 1988. Based on the testimony, it is impossible to find that the prosecution was surprised by Carol Cantlebarry's retraction. Therefore, the trial court erred by declaring her a hostile witness thereby erroneously permitting the prosecution to place its own witness's credibility in issue.

■ The improper impeachment of Carol Cantlebarry sufficiently damaged and prejudiced defendant's case to justify reversal. Her testimony was critical due to the alleged victim's age, prior poor relationship between defendant and the stepson, lack of any physical evidence, expert testimony lending enhanced credibility to the alleged victim, and the manner of the investigation.

Therefore, we hold that the trial court improperly declared Carol Cantlebarry a hostile witness in the absence of a showing of surprise, thereby allowing the prosecution to impeach its own witness.

Accordingly, the second assignment of error is well taken.

■ Defendant, in his third assignment of error, argues that he was denied a fair trial as a result of prosecutorial misconduct during closing argument.

■ Generally, a prosecutor is entitled to a certain degree of latitude during closing argument. *State v. Liberatore* (1982), 69 Ohio St.2d 583, 589, 23 O.O.3d 489, 492, 433 N.E.2d 561, 566; *State v. Woodards* (1966), 6 Ohio St.2d 14, 26, 35 O.O.2d 8, 14, 215 N.E.2d 568, 577, certiorari denied (1966), 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212. The standard for finding a case of prosecutorial misconduct was addressed in *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883, as follows: "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of

the defendant.  \* \* \* ”  (Citation omitted.)  *Id.* at 14, 14 OBR at 318, 470 N.E.2d at 885.

In the instant case, the prosecutor sought to portray defendant's trial counsel as a wily opponent who was attempting to deceive the jury through misdirection and confusion of the issues.  During closing arguments, the prosecution made the following remark:

"Thank you, your Honor.  Ladies and Gentlemen, I am 30 years old, and I dare say that Mr. Myron Shwartz, who, with all due respect to Mr. Shwartz, is an old war-horse around this courthouse, has been practicing law longer than I have been alive.  And as such, I submit to you that he knows most, if not all, of the tricks of the trade."

The Code of Professional Responsibility provides that an attorney is not to allude to matters which will not be supported by admissible evidence.  DR 7–106(C)(1).  Further, " \* \* \* [a] lawyer should not make unfair or derogatory personal reference to opposing counsel.  \* \* \* ”  EC 7–37.

The prosecutor improperly commented on opposing counsel by characterizing him as a person who sought to mislead the jury through trickery.  There was no evidence to substantiate these accusations and, therefore, this conduct is well beyond the normal latitude allowed in closing argument and is improper.

In order to find an instance of prosecutorial misconduct harmless, it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty.  *United States v. Hasting* (1983), 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96.  In the present case, the other evidence presented at trial is not sufficient to excuse the prosecutor's improper remarks, especially in light of our resolution of defendant's first and second assignments of error.  Accordingly, we find that the improper remarks by the prosecution in rebuttal closing argument prejudicially affected defendant's substantial rights.

Defendant's third assignment of error is well taken.

For the foregoing reasons, defendant's assignments of error are sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed
and cause remanded.*

REILLY, P.J., concurs.

JOHN C. YOUNG, J., concurs in part and dissents in part.

RICHARD N. KOEHLER, J., of the Twelfth Appellate District, sitting by assignment.

JOHN C. YOUNG, Judge, concurring in part and dissenting in part.

Although I concur in the court's disposition of the first and second assignments of error, I must respectfully dissent from the court's finding in the third assignment of error that the prosecutor's improper remarks in rebuttal closing argument prejudicially affected defendant's substantial rights.

Prosecutors are granted wide latitude in closing argument and the effect of any prosecutorial misconduct must be considered in light of the whole case. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. Upon review of the record, I find that, although the prosecutor's remarks were improper, I do not consider the remarks, standing alone, to have prejudiced defendant or the have risen to the level of plain error.