DECISION AND JUDGMENT ENTRY
In a trial before the Pickaway County Court of Common Pleas, a jury found Jeffrey S. Schauer guilty of rape, a violation of R.C.2907.02 (A) (2), and child endangering, a violation of R.C.2919.22 (B) (2). Schauer appeals the rape conviction, asserting that the trial court erred in permitting the state to introduce the victim's statements to her emergency room physician under the Evid.R. 803(4) exception to the rule against hearsay. We agree, because the record reveals that the victim did not make the statements for the purpose of medical diagnosis or treatment. However, we find that the error was harmless. Additionally, Schauer asserts that the trial court erred in permitting the state to introduce his tape-recorded confession, because the state failed to introduce some evidence that the victim was raped. We disagree, because even without the physician's testimony, the state introduced some evidence that the victim was raped. Finally, Schauer asserts that the trial court erred in permitting the state to impeach its own witness, the victim, with her prior inconsistent statements. We disagree, because the trial court did not permit plain error by permitting the, state to impeach the victim. Accordingly, we affirm the judgment of the trial court.
 I.
The night Schauer was arrested for rape and child endangering, Schauer and his wife were at home with their three daughters, ages seventeen, fifteen, and eight. Around 10:30 p.m., Schauer's wife left for work. Shortly thereafter, Schauer ordered the victim, his fifteen year-old daughter, to come into he and his wife's bedroom. Schauer confronted the victim with some sexually explicit letters she exchanged with her boyfriend. As Schauer and the victim argued, their voices escalated to the point where both were screaming.
Schauer's eldest daughter, Lindsey, heard the screaming and became frightened. Lindsey went to a neighbor's home and called the police. Deputy Timothy Carpenter arrived at the Schauer home shortly thereafter. Schauer informed Carpenter that there was no problem at his home. Carpenter then observed Lindsey in the neighbor's yard and went to question her. Lindsey told Carpenter that he needed to help her sister, the victim. Carpenter returned to the Schauer household and asked to speak with the victim in his squad car.
The victim gave Carpenter a written statement. She stated that she and Schauer had an argument after he found the letters she exchanged with her boyfriend. She alleged that Schauer forced her to do a striptease and, while she was completely nude, whipped her with a belt. She further alleged that when Schauer read about her engaging in "rough" sex, he inserted his finger into her vagina. Carpenter then questioned Schauer. Schauer told Carpenter that he and the victim argued about the letters and that he whipped her with a belt.
At the officer's request, the victim went to the hospital emergency room. At the hospital, she gave Detective Gary Combs a tape-recorded statement that was consistent with her written statement. However, when the emergency room physician, Dr. Brad Cotton, asked the victim whether she had been sexually assaulted or whether any sexual contact occurred, she replied that none had occurred.
After Dr. Cotton learned of the victim's statements to the officers, he returned, told the victim that he knew about her statement, and specifically asked whether Schauer had put his finger into her vagina. The victim replied that he had. Dr. Cotton then asked the victim whether she felt she sustained any injuries and whether she felt that he needed to look at her vagina. She replied that she was uninjured, and that she did not feel that he needed to conduct a pelvic examination.
Meanwhile, an officer transported Schauer to the Pickaway County Sheriff's office. Schauer waived his Miranda rights and gave a tape-recorded confession to Detective Combs. In his confession, Schauer admitted that he had the victim take off all of her clothing, that he whipped her with a belt, and that he inserted his finger into her vagina approximately three times.
At trial, the state called the victim to the stand. The victim refused to discuss the events that occurred in her parents' bedroom on Fifth Amendment grounds. The state granted the victim immunity, whereupon the victim testified that Schauer forced her to remove her underpants and whipped her with a belt. However, the victim insisted that she wore her nightshirt and bra through the entire argument, that Schauer did not ask her to do a striptease, and that he did not insert his finger into her vagina. The victim testified that she lied the night of the incident because she was scared and angry with her father, and because she wanted him out of the house that night.
The state called Dr. Cotton to testify. Over Schauer's objection, the trial court permitted Dr. Cotton to testify about the victim's statements in the emergency room on the night of the rape.
Also over Schauer's objection, the state introduced Schauer's tape-recorded confession. Detective Combs testified that Schauer and the victim related the same version of events to him in their separate statements.
A jury found Schauer guilty of both charges, and the trial court sentenced him to six years imprisonment on the rape conviction and two years imprisonment on the child endangering conviction, to be served concurrently. Schauer timely appealed the rape conviction, and asserted the following assignments of error:
 I. The court erred in admitting the confession of the defendant, Jeffrey Schauer, prior to or absent proof of the corpus delicti.
 II. The court erred in admitting the testimony of Dr. Cotton as to what the victim told him as that testimony was hearsay without any exception.
 III. The court erred in permitting the prosecutor to impeach her own witness after she granted that witness immunity from prosecution for her testimony.
 II.
In each of his assignments of error, Schauer alleges that the trial court erred by permitting the state to introduce certain items into evidence. A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1963), 390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 III.
Resolution of Schauer's first assignment of error depends in part upon our resolution of his second assignment of error. Accordingly, we address Schauer's second assignment of error first.
In his second assignment of error, Schauer asserts that the trial court erred in admitting Dr. Cotton's testimony regarding the victim's statements to him. Schauer contends that Dr. Cotton's testimony constituted inadmissible hearsay evidence. The state asserts that Dr. Cotton's testimony was admissible pursuant to an exception to the rule against hearsay arising when a patient makes a statement to a doctor for the purpose of medical diagnosis or treatment.
Evid.R. 803(4) provides that a hearsay statement to a medical professional is admissible for its truth if the declarant made the statement "for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof as reasonably pertinent to diagnosis." Evid.R. 803(4); State v. Miller (1988), 43 Ohio App.3d 44. The circumstantial guarantee of trustworthiness that serves as the basis for this exception to the hearsay rule is "the assumption that a person will be truthful about his physical condition to a physician because of the risk of harmful treatment resulting from untruthful statements." Staff Notes to Evid.R. 303 (4); State v. Clary (1991), 73 Ohio App.3d 42, 52.
To assess admissibility under Evid.R. 303(4), the trial court first must evaluate whether the declarant's motive was consistent with the motive of a patient seeking treatment. Clary at 52-53;State v. Demiduk (June 24, 1998), Columbiana App. No. 98-CO-16, unreported; State v. Sanders (Nov. 15, 1995), Montgomery App. No. 13925, unreported. The doctor's belief regarding whether a statement is pertinent to medical diagnosis or treatment may be relevant to assessing the declarant's state of mind. See Clary at 52. However, it is the declarant's belief that her statements will be used for medical diagnosis or treatment and will affect her well-being that is crucial to the reliability of the statement. Clary at 52; Staff Notes to Evid.R. 803(4). Therefore, regardless of the doctor's belief regarding the purpose of a declarant's statement, "[w]hat really counts is what the patient thinks is relevant." Clary at 53 (departing fromUnited States v. Iron Shell (C.A.8, 1980), 633 F.2d 77); Demiduk,supra; Sanders, supra.
In this case, the victim initially told Dr. Cotton that her altercation with Schauer did not include any sexual activity or contact. The victim acknowledged the sexual contact only after Dr. Cotton confronted her about the conflicting story she gave to the law enforcement officers. After the victim confirmed the sexual contact, Dr. Cotton asked her if she felt she had any injuries in her vaginal area and asked whether she felt that he needed to perform a pelvic examination. The victim indicated that she was uninjured and that she did not wish to have a pelvic examination.
Based upon the testimony of Dr. Cotton and the victim, we are unable to conclude that her motives in speaking to Dr. Cotton were akin to those of a patient seeking treatment. First, the fact that the victim initially denied any sexual contact indicates that the victim was not motivated to speak with Dr. Cotton by a desire for proper diagnosis and treatment. Additionally, the fact that the victim denied any injury and stated that she did not wish to have a pelvic exam reflects that her state of mind was not that of a patient seeking diagnosis or treatment. Rather, the victim had already diagnosed herself and determined that she did not need treatment.
Because the record reflects that the victim did not make her statements to Dr. Cotton for the purpose of medical diagnosis or treatment, we find that the trial court abused its discretion in permitting Dr. Cotton to testify as to the victim's statements. In so holding, we note that Dr. Cotton was free to testify about his own statements, actions and state of mind during his examination of the victim, as recollection of one's personal experiences does not constitute hearsay and Schauer does not assert that the trial court erred in permitting that testimony. Accordingly, we sustain Schauer's second assignment of error.
 IV.
In his first assignment of error, Schauer contends that the trial court erred in admitting his tape-recorded confession. Schauer asserts that the state failed to produce some evidence of the corpus delicti of the rape, and therefore that his confession to the rape was inadmissible.
The corpus delicti of a crime is essentially the fact of the crime itself. It is comprised of "two elements: 1. The act. 2. The criminal agency of the act." State v. Maranda (1916), 94 Ohio St. 364, paragraph one of the syllabus. See, also, State v.Edwards (1976), 49 Ohio St.2d 31, 34; State v. Van Hook (1988),39 Ohio St.3d 256, 261.
The state must produce independent evidence of the corpus delicti of a crime before the court may admit an extrajudicial confession. Maranda, 94 Ohio St. 364 at paragraph two of the syllabus; State v. Haynes (1998), 130 Ohio App.3d 31, 34. "The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." Maranda at paragraph two of the syllabus; Haynes at 34. That evidence may be direct or circumstantial. Maranda, 94 Ohio St. at 371; State v.Nicely (1988), 39 Ohio St.3d 147, 154-155; State v. Clark
(1995), 106 Ohio App.3d 426, 431.
The state asserts that it produced some evidence of the corpusdelicti in this case. First, the state asserts that the victim's testimony that Schauer ordered her to remove her underwear constitutes evidence that Schauer took a substantial step toward raping the victim. The state contends that this substantial step corroborates Schauer's criminal purpose. Additionally, the state asserts that Dr. Cotton's testimony regarding the victim's statements to him constitute evidence that Schauer raped the victim. Finally, while conceding that the victim's prior inconsistent statements to law enforcement officers are not admissible for their truth, the state asserts that those statements corroborate Dr. Cotton's testimony and discredit the victim's testimony.
Because we determined that the trial court erred in admitting Dr. Cotton's testimony regarding the victim's statements to him about the rape, we must determine if the remaining evidence in the record constitutes some evidence tending to prove that Schauer raped the victim.
In State v. Ledford (Jan. 24, 2000), Clinton App. No. CA99-05-014, unreported, the defendant confessed to police that he raped a five year-old boy. The child described the rape to his mother and other witnesses, but recanted his statements at trial. Although a medical examination of the child revealed no evidence of rape, the trial court found that the state produced some evidence tending to prove the material elements of rape. Specifically, the mother testified that her child spent the night at the defendant's apartment, that the child made a statement which caused her to call the police and take him to the hospital, and that the hospital staff examined the child's genitals.
In this case, the admissible evidence in the record includes Lindsey's testimony that she heard screaming coming from her parents' bedroom which prompted her to call the police. The victim testified that she was afraid of Schauer and that Schauer ordered her to remove her underwear as he read sexually explicit letters aloud. The record also contains testimony that the law enforcement officers, after interviewing the victim and Schauer, told the victim to go to the emergency room. Detective Combs testified that Schauer and the victim related the same version of events to him in their separate statements. Dr. Cotton testified that his examination of, and conversation with, the victim prompted him to ask the victim whether he needed to perform a pelvic examination.
We find that the foregoing constitutes some evidence of thecorpus delicti of rape. Accordingly, we overrule Schauer's first assignment of error.
 V.
In his third assignment of error, Schauer asserts that the trial court should not have permitted the state to impeach the victim with her prior statements to law enforcement. Specifically, Schauer asserts that the state failed to demonstrate surprise, and therefore that it could not impeach the victim with her prior inconsistent statements pursuant to Evid.R. 607(A).
Schauer did not object at trial to the state's use of the prior inconsistent statements. When a party fails to raise an objection to the proceedings at trial, he waives all but plain error. Crim.R. 52(B). An appellate court that reviews a proceeding for plain error must examine the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error did not occur. State v. Slagle (1992), 65 Ohio St.3d 597. The Supreme Court of Ohio has cautioned that "notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." State v. Long (1978) 53 Ohio St.2d 91, paragraph three of the syllabus.
Evid.R. 607(A) provides that a party may attack its own witness in a proceeding "only upon a showing of surprise and affirmative damage." A party demonstrates surprise when a witness's testimony is materially inconsistent with a prior written or oral statement and when counsel did not have reason to believe that the witness would recant when called to testify.State v. Holmes (1987), 30 Ohio St.3d 20, 23; State v.Cantlebarry (1990), 69 Ohio App.3d 216. The issue of whether a party has been taken by surprise by the witness's testimony is entrusted to the sound discretion of the trial court. State v.Diehl (1981), 67 Ohio St.2d 389, 391.
In this case, the victim's testimony at trial was materially inconsistent with her prior written and oral statements. Schauer asserts, however, that the state had reason to believe that the victim would recant her testimony, as demonstrated by the fact that the state granted the victim immunity. We find that the record is ambiguous regarding whether the state had reason to believe that the victim would recant her testimony. Although the state granted the victim immunity, it did not do so until after it called the victim to testify and she refused to answer questions. Thus, we cannot say that the trial court abused its discretion by determining that the state was surprised when the victim recanted her previous statements. Moreover, even if the state was not surprised by the victim's testimony, any error on the part of the trial court did not amount to plain error. Based upon the remaining evidence properly admitted at trial, including Schauer's confession, the jury would have convicted Schauer even absent the impeachment of the victim with her prior inconsistent statements.
Accordingly, we overrule Schauer's third assignment of error.
 VI.
Having sustained Schauer's second assignment of error, and having overruled his first and third assignments of error, we now assess whether the trial court's error warrants reversal or was harmless. Any alleged error on the part of the trial court in admitting evidence is harmless if the remaining evidence, standing alone, constitutes overwhelming proof of the defendant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus; State v. Lampkin (Dec. 27, 1999) Scioto App. No. 99CA2635, unreported. Pursuant to Crim.R. 52 (A), harmless errors are not grounds for reversal of a conviction. Crim.R. 52 (A);State v. Brown (1992), 65 Ohio St.3d 483, 485; State v. Reiners
(Apr. 24, 1997), Meigs App. No. 96CA2229, unreported.
In this case, the evidence remaining in the record after we exclude Dr. Cotton's testimony about the victim's statements includes: (1) Schauer's confession, (2) Lindsey's testimony that she heard screaming so severe that it caused her to notify the sheriff's department, (3) the victim's testimony that she was afraid of Schauer and that he forced her to remove her underwear as he read letters with sexually explicit content, (4) the officers' testimony that the victim's statements, which were consistent with Schauer's statement, caused them to refer her to the hospital, and (5) Dr. Cotton's testimony that his examination and conversation with the victim prompted him to inquire about performing a pelvic examination. We find that this evidence, standing alone, constitutes overwhelming proof of Schauer's guilt. Therefore, though the trial court erred in permitting Dr. Cotton to testify about the victim's statements to him, that error was harmless.
Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, J.: Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment and Opinion as to A/E I and A/E III. Dissents as to A/E II.
For the Court
 BY: ____________________________ Roger L. Kline, Presiding Judge