[Cite as *State v. Burns*, 2011-Ohio-5926.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |  |
|---|---|---|---|
|  | : | JUDGES: | |
| THE STATE OF OHIO, | : | W. Scott Gwin, P.J. | |
|  | : | Sheila G. Farmer, J. | |
| Appellee, | : | Julie A. Edwards, J. | |
|  | : | | |
| v. | : | Case No. 10CA130 | |
|  | : | | |
|  | : | | |
| ARLIE BURNS, | : | O P I N I O N | |
| Appellant. | | | |

CHARACTER OF PROCEEDING:    Criminal Appeal from Richland
County Court of Common Pleas Case
No. 2010CR421D

JUDGMENT:    Reversed and Remanded

DATE OF JUDGMENT ENTRY:    November 14, 2011

APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

JAMES J. MAYER, JR.    WILLIAM C. FITHIAN, III
Prosecuting Attorney    111 North Main Street
Richland County, Ohio    Mansfield, Ohio 44902

BY: DANIEL J. BENOIT
Assistant Richland County Prosecutor
38 South Park Street
Mansfield, Ohio 44902

*Edwards, J.*

{¶ 1}  Defendant-appellant, Arlie Burns, appeals his conviction and sentence from the Richland County Court of Common Pleas on one count of aggravated burglary. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶ 2}  On July 9, 2010, the Richland County Grand Jury indicted appellant on one count of aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree. At his arraignment on July 27, 2010, appellant entered a plea of not guilty to the charge.

{¶ 3}  Subsequently, a jury trial commenced on October 14, 2010. The following testimony was adduced at trial.

{¶ 4}  On January 10, 2010 at approximately 9:30 p.m., Tyler Ward, his girlfriend, Robyn Debiew, and her year and a half old nephew went out to dinner. After they returned from dinner, they were in a bedroom in Ward's apartment at 137 Lexington Avenue in Richland County when they heard the main door open. When Ward walked into the living room, he found two guys, one wearing a bandanna and the other wearing a stocking hat. The two men, who attacked him, were trying to steal Ward's TV. Ward testified that he began screaming at the men and telling them to leave and that the two men continued attacking him. According to Ward, "they had me on the ground and was beating me, kicking me, punching me…" Transcript at 46.

{¶ 5}  Ward testified that the man in the bandanna was stocky, weighed approximately 250 to 300 pounds and was of mixed race while the other man was a taller, skinny white male. While the white male had Ward pinned to the ground in the

hallway, the other male ran into the bedroom where Debiew and her nephew were located and shoved Debiew to the ground. Debiew was able to pull the brown hat off of the man's head. The mixed race male then began going through Ward's drawers and took $200.00 to $300.00 in cash that was in a dresser drawer. The two men then proceeded out the door and out into the back alley.

{¶ 6}   The police collected the brown Carhartt stocking-type cap that had been left at the scene. Ward testified that he later received a telephone call from someone named "Johnny" providing him with the name J.R. or Arlie Burns as a possible suspect and that he relayed such information to the police. At trial, Ward identified appellant as the short, stocky, mixed-race male who had entered his apartment and testified that he was 100% sure that appellant was one of the burglars.  Ward picked Neil Copeland out of a photo array as one of the men involved in the burglary of his apartment.

{¶ 7}   On cross-examination, Ward testified that appellant had a bandanna and hat on and that he could see appellant's mouth, nose, eyes, and facial hair.

{¶ 8}   At trial, Robyn Debiew testified that the man who pushed her down was mixed-race and was shorter than the white male.  She was able to see the man's eyes and eyebrows and sideburns and identified appellant as being involved in the burglary. She testified that appellant fit the description of the man who pushed her down because he had sideburns and the same type of skin and hair and was the same weight and height.

{¶ 9}   Testimony was adduced at trial that DNA obtained from the hat recovered from the scene was from Neil Copeland. At trial, Copeland testified that he knew appellant and that appellant also went by the name "JR". Copeland further testified that,

on January 3, 2010, he went with appellant to a residence on Lexington Avenue. Copeland testified that he was the driver on such date. According to Copeland, on January 10, 2010, the two of them went to the same address to get money or drugs and that it was appellant's idea. Copeland testified that when they entered Ward's apartment, appellant was wearing a ski mask while he had a scarf or bandanna covering his face and was wearing a hat.

{¶ 10} After the burglary, Copeland was contacted by his probation officer and told that a Detective would like to speak with him. During a taped statement, Copeland admitted to being involved in the burglary and told the Detective that appellant was also involved. Copeland further testified that when he initially talked to the Detective, he denied involvement in the burglary but that when he was confronted with the evidence against him, he admitted his involvement.

{¶ 11} Detective Chad Brubaker of the Mansfield Police Department testified that after testing on the hat revealed Neil Copeland's DNA, he contacted Neil Copeland and that Copeland initially denied involvement in the burglary. However, after being confronted by the DNA evidence, Copeland admitted he was involved and implicated appellant as a co-defendant. Detective Brubaker further testified that when he later spoke with Tyler Ward, Ward provided him with the name JR or Arlie Burns as a potential suspect. The Detective then asked appellant to come down to the police station. According to Detective Brubaker, appellant initially denied involvement in the burglary, but later stated that he had driven Copeland to the scene but had not exited the car. The Detective did not show any witness a photo array including appellant

because he did not believe that either Ward of Debiew would be able to pick appellant out of a line-up based on what they had told him.

{¶ 12} After the State rested, appellant called Amanda Cline, his fiancée, as a witness. Cline testified that Copeland picked up appellant from his mother's home on January 3, 2010. Cline further testified that appellant was with her in Wooster, Ohio when the burglary occurred on January 10, 2010. On cross-examination, Cline admitted that even though she was aware of the indictment against appellant in July of 2010 and knew that the indictment indicated that the crime occurred on January 10, 2010, she did not contact the police or the Prosecutor's Office with the information that appellant was with her in Wooster on such date until the night before trial.

{¶ 13} At the conclusion of the evidence and the end of deliberations, the jury, on October 15, 2010, found appellant guilty of the crime of aggravated burglary. Pursuant to a Sentencing Entry filed on October 19, 2010, the trial court sentenced appellant to six years in prison and ordered that such sentence be served consecutively to appellant's sentence in another case. The trial court also ordered that appellant pay restitution to Ward.

{¶ 14} Appellant now raises the following assignments of error on appeal:

{¶ 15} "I. PROSECUTORIAL MISCONDUCT DEPRIVED APPELLANT OF A FAIR TRIAL. THE PROSECUTOR IMPROPERLY SUGGESTED THAT HEARSAY IDENTIFIED THE APPELLANT AS ONE OF THE BURGLARS.

{¶ 16} "II. APPELLANT'S ATTORNEY'S FAILURE TO FILE A NOTICE OF ALIBI ONE WEEK PRIOR TO TRIAL, RESULTING IN THE EXCLUSION OF A CRUCIAL WITNESS' TESTIMONY, CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 17} "III. THE COURT BELOW ERRED PREJUDICIALLY AGAINST APPELLANT WHEN IT REFUSED TO ADMIT THE TESTIMONY OF CELLMATES OF CO-DEFENDANT, NEIL COPELAND."

I

{¶ 18} Appellant, in his first assignment of error, argues that, due to prosecutorial misconduct, he was denied a fair trial. Appellant specifically contends that the prosecutor improperly suggested that hearsay testimony from Tyler Ward identified appellant as one of the burglars.

{¶ 19} As is stated above, Ward testified that he received a phone call from someone that he knew named "Johnny" who provided him with the name "JR" as a possible suspect. After defense counsel objected to such testimony, arguing that it was hearsay, the following discussion took place on the record:

{¶ 20} "**SIDEBAR**:

{¶ 21} "MR. ROBINSON: This is one of those used for the truth of the matter asserted; however, it is how they ended up with the defendant's name and started to looking (sic) in his direction. He got a call from Johnny Craft that this JR, Arlie Burns has been bragging about doing this. He goes back to the police officers and tells them and then - -

{¶ 22} "THE COURT: Is Craft going to testify?

{¶ 23} "MR. ROBINSON: I don't think so. I don't know. I haven't listed him in the list of witnesses, so no.

{¶ 24} "THE COURT: What do you propose he says?

{¶ 25} "MR. ROBINSON: Craft says that a guy named JR has bragged that he burglarized a young kid's house around - - near the neighborhood.  So Craft calls him and says, hey, I think this guy named JR did it.  That's how he gets the name of JR to tell the police.

{¶ 26} "THE COURT: Okay.

{¶ 27} "MR. RAKESTRAW: Double hearsay, no exception.

{¶ 28} "THE COURT: What I don't want you to do is to lead him to say what was said.  You will be permitted and I would suggest that you lead him to get this done.  Did you hear from someone that the defendant might have been…

{¶ 29} "MR. ROBINSON: I will ask it that way.

{¶ 30} "THE COURT: Something along that line.  Therefore, he has an opportunity to explain why he did what he did next without hearsay."  Transcript at 57-59.

{¶ 31} Appellant then testified that someone gave him the name of J.R. or Arlie Burns as a possible suspect and that he relayed such information to the police. Appellant now maintains that such testimony was inadmissible hearsay and should have been excluded at trial.

{¶ 32} The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the particular case and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing the disputed evidence. See *State v. Oman* (Feb. 14, 2000), Stark No. 1999CA00027, 2000 WL 22219

{¶ 33} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen* (1987), 31 Ohio St.3d 111, 119, 509 N.E.2d 383.

{¶ 34} "The hearsay rule ... is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine-are generally absent for things said out of court." *Williamson v. United States* (1994), 512 U.S. 594, 598,114 S.Ct. 2431, 2434.

{¶ 35} We need not disturb appellant's conviction if the trial court committed harmless error, however. See Crim.R. 52(A); *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. Under this review, "[e]rror in the admission or exclusion of evidence in a criminal trial must be considered prejudicial unless the court can declare, beyond a reasonable doubt, that the error was harmless, and unless there is no reasonable possibility that the evidence, or the exclusion of evidence, may have contributed to the accused's conviction." *State v. Jones,* Franklin App. No. 07AP-771, 2008-Ohio-3565, ¶ 13, citing *State v. Bayless* (1976), 48 Ohio St.2d 73, 106, 357 N.E.2d 1035, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135.

"'Whether [the] error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'"  (Bracketed word sic.) *Id.,* quoting *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 78.

{¶ 36} We find that Tyler's Ward's testimony that he received a telephone call from someone, namely, Johnny Craft, providing him with the name J.R. or Arlie Burns as a possible suspect was not inadmissible hearsay because it was not asserted to prove the truth of the matter asserted-that appellant was involved in the burglary.  We note that Johnny Craft did not testify at trial.  Under Ohio law, statements which are not offered to prove the truth of the matter asserted but offered to explain a police officer's conduct while investigating a crime are not hearsay. *State v. Cantlebarry* (1990), 69 Ohio App.3d 216, 221, 590 N.E.2d 342, citing *State v. Thomas* (1980), 61 Ohio St.2d 223, 232, 400 N.E.2d 401.  Rather, in this case, such testimony was offered to show how the police identified appellant as a possible suspect.

{¶ 37} Moreover, assuming arguendo that such testimony was inadmissible hearsay, we find, upon our review of the record, that it was harmless error. As is stated above, Tyler Ward identified one of his assailants as a mixed race, stocky man who weighed a "good 250 pounds probably." Transcript at 47.  Robyn Debiew testified that the man who pushed her down was mixed race and was shorter and stockier than the white man who accompanied him.  Both Ward and Robyn Debiew identified appellant at trial as one of the men involved in the burglary and indicated that they were sure that

the man was appellant. Both indicated that they were able to observe at least part of appellant's face during the incident.

{¶ 38} Testimony was also adduced that, during the burglary, Debiew was able to grab the hat off of the mixed race male who was involved in the burglary. Testing revealed the presence of Copeland's DNA. At trial, Copeland testified that he provided the man with the hat and that the hat was his. During his interview with police, Copeland implicated appellant. As part of his plea agreement, Copeland pleaded guilty to an F-3 burglary, which was an amended charge. At trial, Copeland, who was on probation for another offense, testified that his sentence was conditioned on his testifying truthfully in appellant's case. When questioned by police after being implicated by Copeland, appellant initially denied involvement, but later admitted that he had driven Copeland to the scene.

{¶ 39} After the State rested, appellant called Amanda Cline, his fiancée, as a witness. Cline testified that, on January 3, 2010, she saw Copeland pick up appellant from his mother's house. She also testified that, on January 10, 2010, she was with appellant in Wooster, Ohio. However, Cline never conveyed such information to the police or prosecution until right before trial.

{¶ 40} Based on the overwhelming evidence of appellant's guilt, we find that the admission of Tyler Ward's testimony about the alleged call from "Johnny" was harmless error.

{¶ 41} Appellant's first assignment of error is, therefore, overruled.

{¶ 42}

II

{¶ 43} Appellant, in his second assignment of error, argues that he received ineffective assistance of counsel. Appellant specifically maintains that his trial counsel was ineffective in failing to file a written Notice of Alibi one week prior to trial.

{¶ 44} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. In order to warrant a finding that trial counsel was ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance* (2009), —— U.S. ——, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251. We apply the *Strickland* test to all claims of ineffective assistance of counsel, both trial counsel, or appellate counsel. *State v. Turner,* Licking App. No.2006–CA–123, 2007–Ohio–4583; *State v. Godfrey* (Sept. 2, 1999), Licking App. No. 97CA0155, 1999 WL 770253.

{¶ 45} To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104

S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

{¶ 46} Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland,* 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

{¶ 47} During the morning of trial, defense counsel indicated to the trial court that he intended to present alibi witnesses who would testify that appellant was in Wooster, Ohio on January 10, 2010. Defense counsel indicated that he had two alibi witnesses, one who was appellant's fiancée, Amanda Cline, and the other an unnamed witness. Because appellant failed to file a written Notice of Alibi seven days prior to trial pursuant to Crim.R. 12.1, the trial court exercised its discretion and limited appellant to one alibi witness. Subsequently, Amanda Cline testified that appellant was with her in Wooster, Ohio on January 10, 2010, the date of the burglary.

{¶ 48} Appellant did not proffer the testimony of the other alleged alibi witness. Absent a proffer, the substance of the alleged alibi witness' proposed testimony is a

matter of sheer speculation, and in that event the record does not demonstrate that defense counsel performed deficiently by failing to call such witness to testify at trial. Without a showing of deficient performance, ineffective assistance of counsel is not demonstrated. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 49} Based on the foregoing, appellant's second assignment of error is overruled.

III

{¶ 50} Appellant, in his third assignment of error, contends that the trial court erred in refusing to admit testimony from cellmates of Neil Copeland. Appellant asserts that these two cellmates would have testified that Copeland indicated to them that he gave false testimony against appellant.

{¶ 51} After the trial court refused to admit such testimony on the basis that it constituted hearsay and did not fall within any exceptions to the hearsay rule, appellant proffered the testimony of Dustin Grit and Concepcion Hernandez. Jr., Neil Copeland's alleged cellmates.  The following testimony was adduced when Grit  was asked whether Copeland told him anything about the incident:

{¶ 52} "A. Yes.  He told me that he had - - him and one of his buddies had robbed Mr. Ward for some pills and that that's why he was locked up.  And I asked him why he was, uhm, who was with him, and he said one of his buddies.  He said the detective from the case told him not to change the story, to keep it straight, and he told me that he had blamed it on Mr. Burns.

{¶ 53} "Q. Did he mention the detective?

{¶ 54} "A. He didn't say the name, no.

{¶ 55} "Q. So, basically, so that I can understand and the court can understand, he said that he continued to blame Mr. Burns, because that was Tyler's story, and he stuck to it?

{¶ 56} "A. Yeah.  Yeah.  That was the original story, and he just stuck to it.  He told me he didn't - -

{¶ 57} "Q. Did he say anything about who was with him?

{¶ 58} "A. No.  He didn't say who was with him.  He just said he didn't want to involve the other person, because his name was never brought up.

{¶ 59} "Q. Meaning it was never brought up in Tyler's report or - -

{¶ 60} "A. Right.

{¶ 61} "Q. - - Robyn's report?

{¶ 62} "A. Right.

{¶ 63} "Q. Did he say anything else?

{¶ 64} "A. No.  That was pretty much it."  Transcript at 275-276.

{¶ 65} In turn, Concepcion testified that Copeland told him that when the police asked him who was with him, "the first person came to his head was JR. He said he didn't want to tell on the person that was actually with him. And…he couldn't change his story or whatever, but that JR wasn't there with him." Transcript at 280.  Concepcion testified that Copeland said that he did not want to "rat on his other friend."  Transcript at 281.

{¶ 66} Previously, the following testimony had been adduced when Copeland was asked, during cross-examination, whether he told anyone that he implicated appellant "primarily because Tyler had suggested that he was with you?"

{¶ 67} "A. Say that again.

{¶ 68} "Q. Did he ever tell anyone that the reason you implicated Arlie was that Tyler had implicated him and you just continued the story"

{¶ 69} "A. I went along with it, but that was the truth.  What Tyler knew was the truth.  I went along with it.

{¶ 70} "Q. I see.  So what you're telling me is that you knew what Tyler said?

{¶ 71} "A. I wasn't going to say a word.

{¶ 72} "Q. Yeah.

{¶ 73} "A. And because, you know, I was informed that, hey, Tyler already says it is this guy, JR.  Well, you know what, yeah, it was.

{¶ 74} "Q. And who did you tell that to?

{¶ 75} "A. The detective.

{¶ 76} "Q. Did you tell it to Concepcion Hernandez?

{¶ 77} "A. I don't know who that is.

{¶ 78} "Q. How about Dustin Grit?

{¶ 79} "A. I don't know who that is either.

{¶ 80} "Q. Were you ever in jail with either of those two?

{¶ 81} "A. I was in jail.

{¶ 82} "Q. Uhm-hum.

{¶ 83} "A. I cannot recall neither of those names.

{¶ 84} "Q. When you were in jail, did you have what we would call bunk mates?

{¶ 85} "A. Yes.

{¶ 86} "Q. Uhm-hum.  And who were your bunk mates?

{¶ 87} "A. Uhm, nobody, uhm, nobody that wasn't there more than a couple of days.

{¶ 88} "Q. I see.  And you don't recall their names?

{¶ 89} "A. No."  Transcript at 184-185.

{¶ 90} Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid .R. 801(C). Hearsay is not admissible unless it falls within one of the exceptions enumerated in the rules.

{¶ 91} Appellant argues that the trial court erred in refusing to admit the testimony of Copeland's cellmates because such testimony was admissible under Evid.R. 801(D)(2)(e). Evid.R. 801(D)(2)(e), provides that a statement of a co-conspirator is not hearsay when certain requirements are met. Specifically, the rule provides that "[a] statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." The proponent of the statement must establish: (1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; (3) the declarant's participation in the conspiracy; (4) that the statement was made during the course of the conspiracy; and (5) that the statement was in furtherance of the conspiracy. *State v. Milo* (1982), 6 Ohio App.3d 19, 451 N.E.2d 1253.

{¶ 92} A conspiracy does not necessarily end with the commission of the crime. *State v. Siller,* Cuyahoga App. No. 80219, 2003-Ohio-1948, at paragraph 28, citing *State v. Shelton* (1977), 51 Ohio St.2d 68, 364 N.E.2d 1152. A statement made by a co-conspirator after the crime may be admissible under Evid.R. 801(D)(2)(e) if it was made in an effort to conceal the crime. *Id.*

{¶ 93} We find that the statements that Neil Copeland allegedly made, while in jail, to his cellmates did not fall within the hearsay exception contained Evid.R. 801(D)(2)(e). Such statements were not made during the course and in furtherance of any alleged conspiracy and were not made in an effort to conceal the crime.

{¶ 94} Appellant also contends that such statements were admissions against interest and were admissible under Evid.R. 804(B)(3). Evid.R. 804 states, in relevant part, as follows: "(B) Hearsay exceptions "The following are not excluded by the hearsay rule <u>if the declarant is unavailable as a witness</u>:…*"(3) Statement against interest.* A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement." (Emphasis added).

{¶ 95} In the case sub judice, the declarant, Neil Copeland, clearly was not unavailable. He testified at trial and was subject to cross-examination. He, therefore,

cannot be deemed unavailable for purposes of Evid.R. 804(B)(3). Such exception, therefore, is not applicable.

{¶ 96} The next issue for determination is whether or not Copeland's alleged statements to Grit and Concepcion were admissible under Evid. R. 613 for impeachment purposes. Evid. R. 613(B), captioned "Extrinsic evidence of prior inconsistent statement of witness," permits impeachment of self-contradictory statements and the use of extrinsic evidence to so impeach. *State v. Francis* (Feb. 23, 2000), Guernsey App. No. 98CA24, 2000 WL 221947. The rule reads as follows: "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

{¶ 97} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

{¶ 98} "(2) The subject matter of the statement is one of the following:

{¶ 99} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

{¶100} "(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(B) or 706;

{¶101} "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."

{¶ 102} Upon our review of the record, we find that the statements of Grit and Concepcion were admissible under Evid.R. 613(B) to impeach Copeland. While

Copeland testified that he implicated appellant because Tyler Ward had implicated appellant and because it was the truth, Grit testified that Copeland told him that "he didn't want to involve the other person, because his name was never brought up." Transcript at 276.  Clearly, such other person was not appellant.

{¶ 103}    In turn, Concepcion testified that Copeland told him that appellant was not with him at the time of the burglary.  We find that both statements contradicted Copeland's testimony at trial and should have been admitted to impeach Copeland's prior inconsistent statement.

{¶ 104}    We find that the trial court abused its discretion in excluding the testimony of Grit and Concepcion as to what Copeland allegedly had told them while in jail.

{¶ 105}    Appellant's third assignment of error is, therefore, sustained.

{¶ 106}    Accordingly, the judgment of the Richland County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.

By: Edwards, J.

Gwin, P.J. concurs and

Farmer, J. dissents



JUDGES

*Farmer, J., dissents*

{¶106} I respectfully dissent from the majority's decision in Assignment of Error III because pursuant to Evid.R. 613(B), I find Copeland was not afforded a prior opportunity to explain or deny his statements.  Copeland's direct and cross-examination do not rise to the level of providing an opportunity as he was not questioned on specific statements he made to his cellmates.  I would find the foundation falls short of the mandates required by Evid.R.613(B).  *State v. Theuring* (1988), 46 Ohio App.3d 152, 155.  Copeland was not afforded a clear prior opportunity to explain or deny the alleged statements made to Grit and Hernandez.

{¶107} I would deny Assignment of Error III.

_____
HON. SHEILA G. FARMER

[Cite as *State v. Burns*, 2011-Ohio-5926.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THE STATE OF OHIO, | : | |
| | : | |
| Appellee, | : | |
| | : | |
| | : | |
| v. | : | JUDGMENT ENTRY |
| | : | |
| ARLIE BURNS, | : | |
| | : | |
| Appellant. | : | CASE NO. 10CA130 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.  Costs assessed to the appellee.

_____

_____

_____

JUDGES