THE STATE OF OHIO, APPELLANT, *v.* HOLMES, APPELLEE.

[Cite as State *v.* Holmes (1987), 30 Ohio St. 3d 20.]

(No. 86-888—Decided April 8, 1987.)

 

*John W. Allen,* prosecuting attorney, and *Jerry E. Ault,* for appellant. *J. Boyd Binning,* for appellee.

*Per Curiam.* The issue presented in this action is whether a new trial was properly granted to the appellee. For the reasons that follow, we answer in the affirmative and affirm the decision of the court of appeals.

The instant controversy centers around the trial testimony of Catherine Howell, a witness for the prosecution. Howell had been acquainted with the appellee for a long period of time. Appellant commenced its direct examination of Howell with questions regarding statements she allegedly made to certain Mansfield police officers prior to trial. When Howell denied making such statements, appellant began to impeach its own witness. This occurred prior to a declaration by the trial court that Howell was a hostile witness. The following testimony is relevant:

"Q. Did you ever discuss what June Bradley or George Holmes told you with David Shook of the Mansfield Police Department?

"A. Shook came out to my house, him and Robert Mortimer. Robert and him were standing in the parking lot, and I came across from my Mom's. Mortimer said, Catherine, didn't you tell me that June Bradley told you he shot that man downtown? Then I said, No, I can't remember telling you that. He said, well you did.

"* * *

"Q. What did you say to Detective Shook?

"A. He asked me — he said, I told him that June told me that he did it, and I said, No, because he didn't tell me, and I didn't tell Shook that. What I told Shook was —

"Q. All right. Did you ever have an occasion to talk to Detective Mortimer about that?

"A. Yes.

"Q. What did you tell Detective Mortimer?

"A. I told him — he asked me, Did I hear about the shooting? I said, yes, I heard. That's the only thing I can remember. Anything other than that I can't remember me saying. Five years is a long time.

"Q. So if he indicates that you did indeed tell him that George Holmes told you something —

"Mr. Lippe: Objection.

"* * *

"Q. Then you are stating now that you don't remember him telling you or your telling him that?

"A. Sir, George Holmes never told me that he shot anybody, no.

"Q. I'll ask the question again.

"* * *

"If Mr. Mortimer indicated that you did indeed, in fact, say something to him about what George Holmes told you, you don't remember that?

"A. No, I don't.

"Q. Do you know a Captain Arcudi from the Mansfield Police Department?

"A. I hadn't told Arcudi nothing, and I know him.

"* * *

"Q. Did you ever discuss anything that George Holmes might have told you about this homicide with him?

"A. No, not the way you're trying to put it.

"* * *

"Mr. Ault: Your Honor, at this time I would request that the court declare this witness hostile. It's quite obvious.

"The Court: We'll allow you to continue with your questions. Proceed. You can obviously impeach her if you have such to do with. If you don't you can't.

"Q. Isn't it true that approximately a year and a half ago you told Captain Arcudi —

"Mr. Lippe: Objection.

"The Court: He can ask the question.

"Mr. Lippe: Your Honor, she's not a hostile witness just because she's not giving the answer the Prosecutor wants to hear.

"* * *

"The Court: I'll declare her a hostile witness.

"Mr. Lippe: Then I object to it."

Appellant, believing that Howell had passed along the alleged admission of appellee that he "shot that white hunkey" (*sic*) to the police officers, obviously utilized its direct examination of Howell in an attempt to impeach her testimony. Appellant continued to place the witness in a situation which would require her to conform her testimony to the future testimony of Mansfield police officers Arcudi, Shook and Mortimer. Threatening to call a future witness with contradictory statements was a clear attempt by appellant to discredit Howell's testimony.

We agree with the following observation of the court of appeals in its well-reasoned opinion: "* * * The prosecution herein * * * placed alleged prior inconsistent statements into evidence by way of impeachment, thus doing indirectly what it could not achieve directly." (Emphasis deleted.) In

fact, the prosecution was able to impeach its own witness without introducing a prior inconsistent statement. Howell's alleged prior inconsistent statements to the police were never reduced to writing and appellant made no attempt to "voir dire" the officers during Howell's testimony to obtain the prior inconsistent statements.

Evid. R. 607 provides:

"The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness *by means of a prior inconsistent statement* only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Rules 801(D)(1)(A), 801(D)(2), or 803." (Emphasis added.)

Without a prior inconsistent statement in existence, it was error for the trial court to allow the impeachment process to continue.

Appellant also argues that the court of appeals erred in reversing the decision of the trial court to declare Howell a hostile witness. Evid. R. 607 *requires* "a showing of surprise and affirmative damage" before the court is authorized to declare a witness hostile. Surprise can be shown if the testimony is materially inconsistent with the prior written or oral statements and counsel did not have reason to believe that the witness would recant when called to testify. *State* v. *Duffy* (1938), 134 Ohio St. 16, 11 O.O. 383, 15 N.E. 2d 535. See, *e.g.*, *State* v. *Reed* (1981), 65 Ohio St. 2d 117, 125, 19 O.O. 3d 311, 316, 418 N.E. 2d 1359, 1365. See, also, *State* v. *Stearns* (1982), 7 Ohio App. 3d 11, 7 OBR 12, 454 N.E. 2d 139.

In the instant case, the record reveals that appellant knew that Howell would deny making the alleged statements. After being declared a hostile witness, Howell repeatedly denied that she had told the police officers anything concerning an admission by Holmes. The following testimony shows that appellant knew several days earlier that Howell would recant any statements she allegedly made when called to testify:

"Q. Thank you. Isn't it true that on Friday, September 6, 1985, two weeks from tomorrow, myself, Mr. Brown, Detective Mortimer, and Detective Shook came to your residence?

"A. Yes.

"Q. Did we not at that time serve you a subpoena?

"A. Yes.

"Q. Did we not discuss this matter at that time?

"A. Yes, you discussed it, and I told you right in front of Shook that I didn't say it. I asked Mortimer, did I tell Shook that, and Mortimer said, no. Later on he came back by himself.

"Q. Now wait a minute.

"A. Why did Shook say it in front of the prosecution that I said that? He said I don't know. Ask him.

"Q. I will ask him, believe me.

"A. They['re] sitting right there. You can ask him now.

"Q. I'll ask him when he takes the stand under oath. Didn't you state

to me, while I was present at your house on that Friday, that Thursday night before Jerry Howell, your son, had called from Columbus, in the presence of George Holmes, and stated to you —

"Mr. Lippe: Objection. Wait a minute.

"* * *

"Q. Do you recall during that conversation on that Friday Dave Shook saying to you, Catherine, I know you'll tell the truth?

"A. He was talking about —

"Q. Do you recall that, yes or no?

"A. Yes.

"Q. Do you recall your response, or do you recall responding, that kind of truth will get you killed?

"A. I wasn't responding to that, no."

Based upon the foregoing testimony, it is impossible to find that appellant was surprised by Howell's earlier denials. In the absence of surprise, it was error for the trial court to declare Howell a hostile witness. The trial court erroneously permitted appellant to place alleged inconsistent statements into evidence and do indirectly what it could not do directly.

Under the specific circumstances of this case, it is quite evident that allowing that impeachment process to occur and continue endlessly was highly damaging to appellee's cause. Howell's denial that defendant had not admitted any guilt fell on deaf ears. Her testimony was critical. At the conclusion of the trial, the jury interrupted its deliberations with two questions for the trial judge: (1) "Was Catherine Howell declared a hostile witness?" and (2) "How do we treat her testimony?" The jury was instructed that Howell was declared a hostile witness, what effect that determination had on Howell's testimony, and how to treat her testimony. While the instructions may have been proper, we do not believe that they removed the damaging effects of the impeachment process which took place in contravention of the Rules of Evidence.[1]

Therefore, we hold that a new trial was properly granted to the appellee and, accordingly, uphold the decision of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HILDEBRANDT, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HILDEBRANDT, J., of the First Appellate District, sitting for HOLMES, J.

---

[1] We find the issues concerning lack of a prior inconsistent statement and lack of surprise in contravention of Evid. R. 607 to be dispositive and we need not address the issue of hearsay.