OPINION
In this accelerated calendar case, submitted on the record and the briefs of the parties, appellant, Sherrod M. Miller, appeals from the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, entered on February 2, 2000. Appellant was charged with committing acts, which, if committed by an adult, would constitute felonious assault in violation of R.C. 2903.11, a second degree felony. The following facts are relevant to a determination of this appeal.
On January 8, 2000, appellant attended a party in Ashtabula, Ohio. At the end of the party, a melee broke out in which several people assaulted the victim in this case. Appellant was alleged to be one of them. The victim was severely beaten into an unconscious state. On January 20, 2000, appellant was charged in this matter.
Appellant was arraigned on January 21, 2000. Appellant was placed in a detention center pending the hearing and, pursuant to Juv.R. 29(A), was, therefore, entitled to a hearing within ten days. An adjudicatory hearing was scheduled for January 27, 2000. However, the victim was scheduled to receive a neurological examination on January 24, 2000, the results of which were not expected for several days. Consequently, the state filed a motion for a continuance of the hearing on the grounds that it needed the results from the neurological examination in order to ascertain the extent of the injuries to the victim. The trial court granted the continuance and rescheduled the hearing for February 1, 2000, eleven days after appellant was taken into custody.
At the adjudicatory hearing, the prosecution called two eyewitnesses to testify. The court called an additional eyewitness per Evid.R. 614. The defense called three other eyewitnesses. Defense counsel stipulated that the victim had suffered serious physical harm, an element of the offense, at the outset of the hearing. Appellant did not dispute that he had physical contact with the victim during the melee. His defense was that, while he did have contact, he was trying to protect the victim from further harm rather than trying to hurt him.
One of the prosecution witnesses was the victim. Apparently, due to the fact he was beaten unconscious, he had no recollection of the events. The second prosecution witness testified favorably for the defense. She testified that she saw a person fighting the victim, but it was not appellant. This person was kicking the victim when the victim was on the ground. She testified that when she saw appellant lying on top of the victim, he was making people move away from the victim. She testified that she never saw appellant either punch or kick the victim. In contrast, on the night of the incident, she had given a statement to the police indicating that appellant was one of the people involved in the fight.
On re-direct examination of this witness the prosecutor impeached the witness with her prior inconsistent statement. Prior to commencing with the impeachment of this witness by her prior inconsistent statement, no showing was made to the court establishing her testimony surprised or prejudiced the prosecution. When the prosecutor began questioning the witness about the prior statement, defense counsel objected on the grounds that the question was beyond the scope of the cross-examination, but not on the grounds that it constituted an improper impeachment of the witness. The objection was overruled. The prosecutor then asked the witness what she wrote in her statement to the police on the night of the incident. The witness testified:
 "I wrote we was at the party and everyone just — I put everybody down as fighting. I don't know who exactly was fighting. I put everybody's names down in the police report."
 The prosecutor asked her "would that include [appellant]?" The witness responded that it would.
The prosecution's third and final eyewitness testified that she saw the victim being "jumped" by appellant. She also testified that three people other than appellant were kicking the victim. She stated there was a group of people around the victim, some watching, some kicking him. At some point during the fracas, she saw appellant on top of the victim when the victim was on the ground. She testified that when she first saw appellant on top of the victim, he was hitting the victim. Seeing this, she then jumped on appellant, knocking him off the victim. She testified that appellant subdued her and got back on top of the victim, but she did not know if appellant hit the victim again. Then appellant ran away.
The court called a witness to testify per Evid.R. 614. This witness was a cousin of the victim. He made a statement to the police on the night of the incident. In it, he stated that during the fight he had pushed appellant off of the victim. He stated that a group was fighting the victim. He also stated that appellant was punching and "stomping" the victim. In contrast, at the hearing he testified that appellant was not hitting or kicking the victim. He explained his prior statement by testifying that he had felt pressured by his cousins to make the statement that night and that he was angry about what had happened at that time. He testified at the hearing that when he saw appellant slapping the victim on the face, appellant was actually attempting to restore the victim to consciousness, as opposed to trying to harm him. He further explained the change in his version of events by stating that he had since consulted with a couple of his teachers about the incident, and that he was telling the truth now, as opposed to when he gave his statement to the police.
The victim's brother testified for the defense. When the melee broke out, he was in a different area from his brother and got into his own fight. When he got to the area where his brother was, his brother was already on the ground. He testified that when he told appellant the victim was his brother, appellant began pushing people away from the victim, trying to help. However, he too gave a statement to the police on the night of the incident indicating that appellant was one of the people hitting his brother. The witness explained the inconsistency by testifying appellant was among a group of friends that beat up his brother. He stated that when he gave his statement to the police, he named everyone in the group, but, in fact, he did not actually ever see appellant strike his brother.
The defense's second witness was another juvenile who also had been charged in this incident. He testified appellant did not hit the victim, but, rather, appellant was pushing people away from the victim, trying to help him.
Finally, appellant testified on his own behalf. He testified that several fights broke out at once. He claimed he watched for a while and then tried to break up the fight around the victim. He testified that he did not hit or kick the victim, that he was only trying to help, and that he was getting blamed because his friends were involved.
At the conclusion of the hearing, the court found the complaint to be true. The court noted that only one eyewitness maintained a consistent story from the night of the incident through the hearing, and found that she was the only credible witness. The court found that her testimony was sufficient to establish appellant committed the offense beyond a reasonable doubt. From this judgment, appellant timely filed notice of appeal, assigning the following errors:
 "[1]. The juvenile court erred to the prejudice of the juvenile-appellant when it overruled his motion to dismiss and discharge juvenile-appellant, when juvenile-appellant was held in detention without being afforded an adjudicatory hearing within ten (10) days of filing the complaint.
 "[2]. The juvenile-appellant's constitutional rights to due process were prejudiced by the ineffective assistance of trial counsel.
 "[3]. The juvenile court erred to the prejudice of the juvenile-appellant when it allowed the state to impeach its own witness in violation of the rules of evidence.
 "[4]. The juvenile court erred to the prejudice of the juvenile-appellant when it found the complaint true when the finding was against the manifest weight of the evidence.
 "[5]. The juvenile court erred to the prejudice of the juvenile-appellant when it found the complaint true when the finding was not supported by sufficient evidence."
In his first assignment of error, appellant asserts that the trial court erred by failing to conduct appellant's adjudicatory hearing within ten days of the date appellant was placed in detention. This assignment does not raise a constitutional question regarding a defendant's right to a speedy trial, but, rather, raises a question whether the trial court complied with the statutory requirement set forth in Juv.R. 29(A). In pertinent part, Juv.R. 29(A) states:
 "The date for the adjudicatory hearing shall be set when the complaint is filed or as soon thereafter as is practicable. If the child who is the subject of the complaint is in detention or shelter care, the hearing shall be held not later than ten days after the filing of the complaint. Upon a showing of good cause, the adjudicatory hearing may be continued and detention or shelter care extended."
 "The time limitation set forth in Juv.R. 29(A) is a mandatory procedural requirement to which the juvenile court must strictly adhere."[1] However, the rule does allow for continuances upon a showing of good cause. The decision of whether or not to grant a continuance is a decision entrusted to the sound discretion of the trial court.[2] An appellate court will not reverse such a grant absent an abuse of discretion.[3]
In the present case, the prosecution requested a continuance because the victim was undergoing neurological testing which was likely to produce highly relevant evidence regarding the victim's injuries. In this case, the extent of the victim's injuries constituted an element of the offense. It was anticipated the results of the testing would not be available by the date of the originally scheduled hearing, January 27, 2000. However, as a result of the continuance, the hearing occurred only one day beyond the ten-day time limit of Juv.R. 29. We cannot say the trial court abused its discretion in granting this continuance. Appellant's first assignment of error is without merit.
In appellant's second assignment of error, he argues his constitutional rights were violated due to ineffective assistance of trial counsel. To establish a claim for ineffective assistance of counsel, the defendant must prove that counsel's performance fell below an objective standard of reasonable representation and that prejudice arises from counsel's performance.[4] This is a two pronged analysis.
The first prong requires a showing that counsel's performance fell below an objective standard of reasonable representation. "In order to determine whether an attorney's performance was deficient, the [reviewing] court must inquire whether the attorney provided `reasonably effective assistance, considering all of the circumstances.'"[5] A properly licensed attorney is presumed to be competent, thus, judicial scrutiny of his or her performance must be highly deferential.[6] An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance of counsel.[7]
To demonstrate the second prong, prejudice, the defendant must demonstrate that there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.[8]
"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[9]
First, appellant argues that trial counsel breached his essential duty to defend his client by stipulating to an element of felonious assault, "serious physical harm." Trial counsel stated that the defense is "willing to stipulate that [the injuries] might be serious, even though we don't know that for a fact." Trial counsel, in explaining his reasoning to the court, indicated his belief that the extent of the injuries were irrelevant to the defense because appellant's defense strategy was to attempt to demonstrate that appellant did not inflict any injury at all. Appellant attempted to demonstrate at trial that he came to the assistance of the victim.
It was known that the victim was beaten until he was unconscious, an injury sufficient to establish the element of serious physical harm. It was reasonable to assume that the prosecution would prove this element. As appellant intended to assert he did not do it, the amount of harm was, in fact, irrelevant to his defense. Counsel also may have wished to avoid the presentation of evidence which would underscore the brutality of the beating. Defendants frequently argue that the presentation of such evidence tends to prejudice the trier of fact against them.
Furthermore, if appellant did beat the victim, the testimony establishing that fact places appellant on top of the victim while the victim was lying on the ground in a relatively helpless position. Appellant could not be heard to argue in the alternative that, if he did beat the victim, he only inflicted "harm" upon someone who had already suffered "serious harm" and, thus, if guilty, was only guilty of the lesser-included offense of assault. While such an argument, if made, would preclude stipulating to the element of "serious physical harm," that argument is without merit.
Appellant stresses the fact that the testimony establishes several other people were kicking the victim in the head. Those actions caused serious physical harm. Assuming, for purposes of this point, that they did, a party cannot then jump on top of the victim bargaining only for a "regular" assault by hitting the victim in a manner that may not, under normal circumstances, cause serious physical harm. If, in fact, appellant did not enter the melee until the victim had already suffered serious physical harm, his actions are all the more inculpatory. Harm heaped on top of serious physical harm must itself be considered serious physical harm even if under different circumstances it may not have risen to that level. It is impossible to sort out which blow to the victim's head caused what amount of damage. Those that assaulted him all contributed jointly in the harm the victim suffered.
Consequently, appellant's tactical posture prior to trial called for an all or nothing strategy, which counsel employed. Considering all of the circumstances, it appears counsel's decision to stipulate to the element of serious physical harm was a strategic decision that was within the realm of reasonable representation. Consequently, appellant's first ineffective assistance of counsel argument fails on the first prong of the Strickland/Bradley analysis, and it is without merit.
Second, appellant argues trial counsel's performance fell below an objective standard of reasonable representation when trial counsel failed to object to the prosecutor's impeachment of a prosecution witness by prior inconsistent statement without first making a showing of surprise and affirmative damage in accordance with Evid.R. 607. This argument is coextensive with appellant's third assignment of error, in which he argues the trial court committed reversible error when it allowed the impeachment of this witness without requiring a showing of surprise and affirmative damage. Evid.R. 607(A) states:
 "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. * * *"
The only basis in the record for this assignment of error is the testimony of the prosecution's second witness, the first eyewitness to testify. On direct examination, this witness testified that she saw appellant lying on top of the victim, protecting the victim from further assault. She testified that she did not see appellant ever punch or kick the victim. This perception of the event was reiterated on cross-examination. The prosecutor began re-direct examination by asking the witness about her prior statement to the police. Defense counsel objected to this line of questioning on the grounds it was beyond the scope of the cross-examination. The court overruled the objection. The witness was then asked what she wrote in her statement on the night of the incident. The witness responded that she wrote down the names of everybody that was fighting, and acknowledged that appellant was one of those fighting.
Evid.R. 607 requires a showing of surprise and affirmative damage before the court is authorized to allow a party to impeach its own witness.[10] "Surprise can be shown when a witness's testimony is materially inconsistent with a prior written or oral statement and when counsel did not have reason to believe that the witness would recant when called to testify."[11] Affirmative damage occurs when a party's own witness testifies to facts that contradict, deny or harm that party's trial position.[12] "The reason for this rule is to ensure that a party does not call a witness for the sole purpose of impeaching [the witness] with statements which would otherwise be inadmissible."[13] The question whether a party is surprised by a witness's testimony "is a decision that is entrusted to the broad, sound discretion of the trial judge."[14]
Addressing the second assignment of error, it is evident that defense counsel should have objected to the prosecutor's impeachment of the prosecution witness on the grounds of Evid.R. 607. Counsel did object on other grounds, but was overruled. Normally counsel's failure to object would constitute a waiver of the issue which would be subject to Crim.R. 52(B) "plain error" analysis only. However, in an ineffective assistance of counsel exercise, the question is whether counsel's failure to raise the issue, and, thus, preserve it, constituted ineffective assistance of counsel under the constitutional standard. The first question is whether counsel's failure to object constituted a performance falling below an objective standard of reasonable representation.
Up to the point in the trial where she was impeached, the witness had provided testimony which was entirely favorable to appellant. Therefore, we can think of no sound strategic reason for defense counsel not to attempt to prevent the impeachment of this witness. Defense counsel should have objected pursuant to Evid.R. 607. While it might have appeared that the existence of affirmative damage was self-evident, it was possible the prosecution might not have met its burden of demonstrating surprise or affirmative damage. Counsel's failure to object fell below an objective standard of reasonable representation, meeting the first prong of the Strickland/Bradley analysis.
While appellant has demonstrated that counsel's performance fell below the standard of reasonable representation, appellant cannot demonstrate that, but for counsel's error, the result of the trial would have been different. Overlooking the question of whether the prosecution would have been able to meet its burden of showing surprise and affirmative damage and proceed with the impeachment, the trial court reached its verdict on the basis of the testimony given by a single, different witness. That witness testified directly and without equivocation that she saw appellant actively involved in the fracas which seriously injured the victim. The court found this testimony credible. The court indicated it was giving no credence to the testimony of those witnesses who changed their stories, so to speak, from the night of the incident. This witness's testimony was cumulative with the other witnesses' testimony that the court did not believe. Even if this witness were not impeached, it would not have affected the basis of the trial court's conclusion. Thus, the error was not prejudicial, and appellant's argument fails to meet the second prong of the Strickland/Bradley analysis. This portion of appellant's argument is without merit.
With respect to the third assignment of error, appellant argues the trial court should not have permitted the prosecution to impeach a prosecution witness by a prior inconsistent statement without requiring it to meet the burden imposed by Evid.R. 607. However, defense counsel failed to object on these grounds. Because appellant failed to object to the testimony on these grounds, this court is precluded from taking notice of any error on these grounds unless it rises to the level of plain error under Crim.R. 52(B).[15] "An error does not constitute a plain error unless, but for the error, the outcome of the trial clearly would have been otherwise."[16] On the basis of the previous analysis regarding the prejudicial effect of this testimony, appellant's third assignment of error is without merit.
Returning to the final argument within the second assignment of error, appellant argues that counsel's errors, when considered cumulatively, constituted ineffective assistance of counsel. "In order to even consider whether `cumulative' error is present, [this court] would first have to find that multiple errors were committed * * *."[17] We have only found one non-prejudicial error occurred in this case. Thus, cumulative errors do not exist. Appellant's second assignment of error is without merit.
In appellant's fourth assignment of error, appellant argues the finding that the complaint was "true" was against the manifest weight of the evidence.
 "In determining whether the verdict was against the manifest weight of the evidence, `* * * [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"[18]
The prosecution put on two individuals who could testify as to what occurred. One testified unequivocally that appellant assaulted the victim. The other stated that she did not see appellant harm the victim. The defense put on three witnesses. One told the police on the night of the incident that appellant was hitting the victim, but testified at the hearing that appellant was not. The second defense witness was also charged as a result of this incident. The third witness was appellant himself. Additionally, the court called a witness. This witness told the police on the night of the incident that appellant was punching and "stomping" the victim. He too changed his testimony at the hearing. Altogether, there were five witnesses who testified at the hearing that appellant did not assault the victim. Three of them had previously told the police he did do it. The other two were defendants. The court found the testimony of these witnesses "incredible." The court found the only credible witness to be the one who maintained a consistent version of the events throughout.
The reviewing court must defer to the findings of the trier of fact regarding the weight to be given evidence and the credibility of the witnesses.[19] To warrant a reversal on a manifest weight of the evidence claim, the standard of review requires a finding that the trier of fact clearly lost its way in reaching its verdict. Under the circumstances of this case, we cannot conclude that the trier of fact clearly lost its way. Appellant's fourth assignment of error is without merit.
In appellant's final assignment of error, he argues there was insufficient evidence to sustain a finding of true on the complaint. Appellant argues that all of the relevant, credible testimony elicited at the trial indicated it was individuals other than him who were beating the victim in the head area. Appellant's argument overlooks the testimony of the witness who stated she saw appellant on top of the victim, hitting him. This is the witness the court found to be most credible.
When reviewing the sufficiency of the evidence to support a criminal conviction, a court must:
 "[E]xamine the evidence admitted at trial to determine whether such evidence, if believed, would convince the [trier of fact] of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[20]
The testimony of the one prosecution witness, standing alone, was sufficient to support a conviction. Appellant's fifth assignment of error is without merit.
The judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY, J., concurs with Concurring Opinion, MARY CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concurs.
[1] In re Carlos O. (1994), 96 Ohio App.3d 252, 254.
[2] State v. Unger (1981), 67 Ohio St.2d 65, 67.
[3] Id.
[4] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of syllabus.
[5] State v. Laird (Dec. 15, 2000), 11th Dist. No. 99-P-0069, 2000 Ohio App. LEXIS 5924, at *7, quoting State v. Loza (1994), 71 Ohio St.3d 61,1994-Ohio-409.
[6] Strickland v. Washington (1984), 466 U.S. 668, 689.
[7] State v. Clayton (1980), 62 Ohio St.2d 45, 48-49.
[8] Bradley at paragraph three of syllabus.
[9] Id. at 142, quoting Strickland v. Washington (1984),466 U.S. at 694.
[10] State v Asher (1996), 112 Ohio App.3d 646, 652; State v. Holmes
(1987), 30 Ohio St.3d 20, 23.
[11] (Citation omitted.) Asher at 652-653.
[12] State v. Moore (1991), 74 Ohio App.3d 334, 343.
[13] Asher at 653.
[14] State v. Diehl (1981), 67 Ohio St.2d 389, 391.
[15] State v. Brown (Mar. 31, 2000), 11th Dist. Nos. 95-T-5349 and 98-T-0061, 2000 Ohio App. LEXIS 1430, at *15, citing State v. Underwood
(1983), 3 Ohio St.3d 12.
[16] Id. at *15-16, citing State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
[17] State v. Goff (1998), 82 Ohio St.3d 123, 140, 1998-Ohio-369.
[18] (Citations omitted.) State v. Davis (1988), 49 Ohio App.3d 109,113.
[19] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[20] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.