JOURNAL ENTRY AND OPINION
{¶ 1} In State v. Stedman, Cuyahoga County Court of Common Pleas Case No. CR-345782, applicant, Matthew R. Stedman, was convicted of aggravated murder and sentenced to life in prison plus three years on a firearm specification. This court affirmed that judgment in State v.Stedman (Nov. 1, 2001), Cuyahoga App. No. 77334. The Supreme Court of Ohio dismissed Stedman's appeal to that court for the reason that no substantial constitutional question existed and overruled Stedman's motion for leave to appeal. State v. Stedman (2002), 94 Ohio St.3d 1486
[Supreme Court of Ohio Case No. 01-2157].
 {¶ 2} Stedman has filed with the clerk of this court an application for reopening. Stedman asserts that he was denied the effective assistance of appellate counsel because appellate counsel did not assign various errors on direct appeal. We deny the application for reopening. As required by App.R. 26(B)(6), the reasons for our denial follow.
 {¶ 3} On direct appeal, Stedman was represented by counsel but Stedman also filed a supplemental, pro se brief. "Courts have consistently held that res judicata bars an application to reopen when the appellant files a pro se brief." State v. Patrick (Sept. 13, 2001), Cuyahoga App. No. 78605, reopening disallowed (Mar. 21, 2002), Motion No. 35687, at 3 (citations omitted).
 {¶ 4} "The principles of res judicata may be applied to bar the further litigation in a criminal case of issues which were raised previously or could have been raised previously in an appeal. See generally State v. Perry (1967), 10 Ohio St.2d 175, 22 N.E.2d 104, paragraph nine of the syllabus. Claims of ineffective assistance of appellate counsel in an application for reopening may be barred by resjudicata unless circumstances render the application of the doctrine unjust. State v. Murnahan (1992), 63 Ohio St.3d 60, 66, 584 N.E.2d 1204."State v. Williams (Mar. 4, 1991), Cuyahoga App. No. 57988, reopening disallowed (Aug. 15, 1994), Motion No. 52164.
 {¶ 5} In his supplemental, pro se brief Stedman assigned five errors. As a consequence, we must conclude that the application of res judicata in this case is not unjust and that res judicata bars Stedman's request for reopening.
 {¶ 6} We also deny the application on the merits. Having reviewed the arguments set forth in the application for reopening in light of the record, we hold that Stedman has failed to meet his burden to demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). InState v. Spivey (1998), 84 Ohio St.3d 24, 1998-Ohio-704, 701 N.E.2d 696, the Supreme Court specified the proof required of an applicant:
 {¶ 7} "In State v. Reed (1996), 74 Ohio St.3d 534, 535,660 N.E.2d 456, 458, we held that the two prong analysis found inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a `reasonable probability' that he would have been successful. Thus [applicant] bears the burden of establishing that there was a `genuine issue' as to whether he has a `colorable claim' of ineffective assistance of counsel on appeal." Id. at 25
 {¶ 8} . Stedman cannot satisfy either prong of the Strickland test. We must, therefore, deny the application on the merits.
 {¶ 9} "Stedman was convicted of the murder of Shareece Scott, an alleged prostitute, [who] was shot in the face and killed as she leaned into the passenger side window of a small grey car which had pulled to the curb. Her last words, What's up, baby?, preceded the fatal gunshot. The murder remained unsolved for more than two years." State v. Stedman
(Nov. 1, 2001), Cuyahoga App. No. 77334, at 1.
 {¶ 10} In his first assignment of error, Stedman complains that his appellate counsel was ineffective for failing to assign as error that: the prosecutor commented on the fact that Stedman did not testify; and the trial court did not instruct the jury that it may not infer that a defendant who did not testify is guilty. The state correctly observes, however, that Stedman misstates the context of the prosecutor's remarks during closing argument.
 {¶ 11} A witness, George Ciobotaru, "testified that he heard as many as thirty people at work talking about Stedman's involvement [in the murder of Scott]." Id. at 17. During closing argument, the prosecutor observed that Stedman — in his conversations — did not deny his involvement in the murder. No reasonable reading of the transcript would suggest that the prosecutor was commenting on Stedman's failure to testify at trial.
 {¶ 12} Additionally, Stedman acknowledges that trial counsel did not object to these statements. "Thus if an error had been committed, such error had been waived and could only be reviewed on a plain error analysis. Such an argument could succeed only if there was a clear miscarriage of justice. State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332." State v. Taylor (Oct. 17, 1996), Cuyahoga App. No. 69843, reopening disallowed (Oct. 20, 1999), Motion No. 5439, at 16, appeal dismissed (2000), 88 Ohio St.3d 1413, 723 N.E.2d 119.
 {¶ 13} "The conduct of a prosecuting attorney during the course of trial cannot be made a ground for error unless that conduct deprived the defendant of a fair trial. State v. Papp (1978), 64 Ohio App.2d 203,412 N.E.2d 401. In addition, another factor to be considered in determining whether the prosecutor's actions constituted misconduct is whether the remarks prejudicially affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 883."State v. Brooks (Aug. 15, 1985), Cuyahoga App. No. 48914, reopening disallowed (Nov. 9, 2000), Motion No. 19635, at 4, affirmed (2001),92 Ohio St.3d 537, 2001-Ohio-1278, 751 N.E.2d 1040.
 {¶ 14} On direct appeal, Stedman's eighth assignment of error (his fifth pro se assignment of error) challenged the propriety of the prosecutor's statement during closing argument that, after trial, the state could explain why others who heard about Stedman's involvement in the murder were not called as witnesses. This court overruled that assignment of error and observed:
 {¶ 15} "We think that the prosecutor properly alluded to others who also knew of Stedman's involvement and properly implored the jury to consider the presentation of state's witnesses as sufficient to prove Stedman's guilt beyond a reasonable doubt. These comments emanated from evidence properly admitted into evidence during trial and had been made in response to defense counsel's remark at closing. Therefore, we believe that the prosecutor's comments had been within the latitude afforded by the law. Viewing the case in its entirety, including the eyewitness testimony of Potasiewicz [who was with Stedman at the time of the shooting] and Stedman's change of identity and residence in Thailand, these comments made by the prosecutor in final argument did not deprive Stedman of a fair trial or rise to the level of prosecutorial misconduct justifying a reversal." Id. at 17-18.
 {¶ 16} As indicated above, the prosecution's statement is not error. Likewise, those remarks did not prejudicially affect substantial rights of Stedman. In light of this court's review of the record on direct appeal, we cannot conclude that the prosecution's allusion to Stedman's silence in the face of the discussion of others effected a clear miscarriage of justice or deprived Stedman of a fair trial.
 {¶ 17} Accordingly, Stedman's first assignment of error is not well-taken.
 {¶ 18} In his second assignment of error, Stedman contends that the trial court incorrectly permitted the state to use leading questions with a state's witness, George Ciobotaru. At trial, Ciobotaru recanted the oral statement he gave to police indicating that Stedman admitted murdering Scott. The trial court permitted the state to cross-examine Ciobotaru as a hostile witness.
 {¶ 19} Evid.R. 607(A) permits a party calling a witness to attack the credibility of the witness "by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." Stedman argues that the trial court's determination that Ciobotaru was a hostile witness was error because the state learned prior to trial that Ciobotaru's testimony would not be consistent with his statement. As a consequence, Stedman contends that the state cannot demonstrate surprise and the impeachment of Ciobotaru by means of the prior inconsistent statement was error.
 {¶ 20} The state observes that Evid.R. 611(C) authorizes the use of leading questions when a party calls a hostile witness. Evid.R. 611(C) does not contain the "surprise and affirmative damage" requirement. The state argues, therefore, that the trial court's determination that Ciobotaru was a hostile witness was not error.
 {¶ 21} In State v. Holmes (1987), 30 Ohio St.3d 20, 506 N.E.2d 204, the state knew days before trial that a witness would recant her statement to police. The statement was never reduced to writing. The Supreme Court affirmed the reversal of the conviction in Holmes and observed:
 {¶ 22} "In the absence of surprise, it was error for the trial court to declare Howell a hostile witness. The trial court erroneously permitted appellant to place alleged inconsistent statements into evidence and do indirectly what it could not do directly." Id. at 24.
 {¶ 23} In this case, prior to the commencement of Ciobotaru's testimony, the prosecutor acknowledged at side bar that Ciobotaru may refuse to testify or may change his testimony from the statement which he gave to police. During direct examination, Ciobotaru testified that he told the prosecutor at some unspecified earlier time that he did not "remember for sure" whether Stedman admitted murdering Scott.
 {¶ 24} We recognize that, in light of Holmes, appellate counsel could have questioned the propriety of the trial court's permitting the state to cross-examine Ciobotaru regarding his prior statement. Trial counsel did not object to the trial court's determination that Ciobotaru was a hostile witness. The trial court overruled trial counsel's only objection, which was to the initial question by the state regarding what Ciobotaru told police. Stedman can maintain this assignment of error, therefore, only if plain error exists.
 {¶ 25} As discussed above, Stedman must be able to demonstrate that a clear miscarriage of justice occurred in order for this court to conclude that plain error occurred. Andrew Starr testified that Stedman told him that Stedman killed Scott. Likewise, James J. ("JJ") Potasiewicz testified that he was in the car with Stedman when Stedman pulled the gun from the glove compartment, held it directly in front of Potasiewicz's face, and shot Scott.
 {¶ 26} On direct appeal, appellate counsel assigned as error that the trial court admonished Ciobotaru regarding the penalty for perjury outside the hearing of the jury.
 {¶ 27} "Significantly, here, despite the court's reprimand, Ciobotaru never wavered on recanting his prior statement to the police. Thus, the record does not indicate that the trial court's conduct toward Ciobotaru in any way prejudiced Stedman." State v. Stedman (Nov. 1, 2001), Cuyahoga App. No. 77334, at 7.
 {¶ 28} Similarly, we cannot conclude that a clear miscarriage of justice occurred. Other witnesses testified that Stedman shot Scott and admitted shooting her. Stedman has not demonstrated prejudice.
 {¶ 29} Accordingly, Stedman's second assignment of error is not well-taken.
 {¶ 30} In his third assignment of error, Stedman complains that his conviction was based on the uncorroborated testimony of Potasiewicz, his accomplice. The state correctly observes that Stedman relies on a provision in R.C. 2923.03(D) which was deleted by amendment in 1986. Scott was murdered on February 5, 1994. In State v. Williams (1988),38 Ohio St.3d 346, 528 N.E.2d 910, the Supreme Court summarized the history of R.C. 2923.03(D).
 {¶ 31} "[Williams] cites R.C. 2923.03(D), which, at the time relevant herein, stated that `[n]o person shall be convicted of complicity * * * solely upon the testimony of an accomplice, unsupported by other evidence.' n. 12
 {¶ 32} "n12 R.C. 2923.03(D) has been subsequently revised to provide a specific jury instruction. It is not analogous to the former provision." Id. at 354.
 {¶ 33} Additionally, as noted above, both Starr and Ciobotaru testified as to Stedman's guilt. Stedman's third assignment of error is not, therefore, sufficient to provide a basis for reopening.
 {¶ 34} As a consequence, Stedman has not met the standard for reopening. Accordingly, the application for reopening is denied.
MICHAEL J. CORRIGAN, P.J., AND FRANK D. CELEBREZZE, JR., J. CONCUR.