[Cite as *State v. Hare*, 2019-Ohio-3047.]

wCOURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 19 CAA 01 0001 |
| MONTY SCOTT HARE | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:      Appeal from the Delaware County Court
of Common Pleas, Case No. 18 CR I 08
0445

JUDGMENT:      Affirmed in part, and Vacated in part

DATE OF JUDGMENT ENTRY:      July 26, 2019


APPEARANCES:


For Plaintiff-Appellee                    For Defendant-Appellant

MELISSA A. SCHIFFEL                DOMINIC L. MANGO
Delaware County Prosecuting Attorney      Mango Law Office
                                          43 S. Franklin Street
R. JOSEPH VARVEL                   Delaware, Ohio  43015
Assistant Prosecuting Attorney
Delaware County Prosecutor's Office
145 North Union Street
Delaware, Ohio  43015

*Hoffman, J.*

{¶1}  Appellant Monty Scott Hare appeals the judgment entered by the Delaware County Common Pleas Court convicting him of menacing by stalking (R.C. 2903.211(A))(1)) and sentencing him to eighteen months incarceration.  Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}  In the evening hours of August 6, 2018, a female patron of Kintz's bar in Delaware was seated on the patio of the bar, adjacent to the parking lot.  She observed a man, later identified as Appellant, striking a female passenger in a Jeep twice.  The female victim, later identified as Miranda Linn, jumped out of the Jeep and took off running.  The bar patron saw Appellant "peel out" of the parking lot and chase Miranda.

{¶3}  About thirty minutes later, Appellant returned to the bar.  Miranda Linn also returned to the bar.  She attempted to get in the passenger side of the Jeep, but was locked out.  Appellant ran toward the Jeep and jumped in the driver's seat.  Miranda stood outside the Jeep, with her head ducked in the passenger side.  The same bar patron, seated on the patio, heard yelling and arguing.  She advised the bartender of the disturbance in the parking lot.

{¶4}  The bartender went out to the parking lot, and heard Miranda repeatedly asking for the car keys.  The bartender asked Miranda if the Jeep was titled in her name, and Miranda answered in the affirmative.  The bartender told Appellant to give Miranda her keys.  He responded negatively, and he left in the Jeep.

{¶5}  Police responded to the scene and interviewed Miranda Linn.  Miranda gave a written statement to police.

{¶6} After a police officer drove her home, Miranda called Appellant and asked him to return the Jeep. When he did so, an argument ensued. Appellant pointed a knife at Miranda and threatened to gut her like a deer. Miranda went outside and hid under a neighbor's wheelchair ramp, from which she called 911. As Appellant approached, she stopped speaking with the dispatcher, and communicated only with button presses on her phone. She warned the dispatcher Appellant will fight the police. By the time police arrived, Appellant had left the scene. Miranda gave another written statement to police.

{¶7} Appellant was indicted by the Delaware County Grand Jury with one count of domestic violence and one count of menacing by stalking. The case proceeded to jury trial in the Delaware County Common Pleas Court.

{¶8} At trial, Miranda Linn testified Appellant never hit her, and she only wrote in the statement what the witnesses had reported because she felt pressured to do so by police. The trial court sua sponte declared Miranda to be a hostile witness, and allowed the prosecutor to impeach her by using her written statement to the police.

{¶9} She further testified nothing happened to cause her to make the 911 call. She testified she was overwhelmed with fighting all day, she had been crying all day, it was almost 3 a.m., and she was high. She testified she did not know if she told deputies Appellant threatened to gut her like a deer, and did not remember making a written statement. Again, the prosecutor questioned her regarding her prior written statement.

{¶10} The jury found Appellant not guilty of domestic violence, but guilty of menacing by stalking. He was sentenced to 18 months incarceration, and ordered to pay court costs, including the costs of his court appointed counsel.

**{¶11}** It is from the December 4, 2018 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT ABUSED ITS DISCRETION AND PREJUDICED THE APPELLANT'S SUBSTANTIAL RIGHTS BY PERMITTING THE STATE TO CROSS-EXAMINE AND IMPEACH ITS OWN WITNESS WITH A PRIOR INCONSISTENT STATEMENT WITHOUT ESTABLISHING SURPRISE AND AFFIRMATIVE DAMAGE AS REQUIRED UNDER EVIDENCE RULE 607(A).

II. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT ALLOWED THE ARRESTING OFFICE TO COMMENT IN THE PRESENCE OF THE JURY ON APPELLANT'S INVOCATION OF HIS FIFTH AMENDMENT RIGHT TO REMAIN SILENT AND HIS REFUSAL TO RESPOND TO THE OFFICER'S CUSTODIAL QUESTIONS; THEREBY, THE COURT VIOLATED APPELLANT'S RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION ARTICLE I, SECTION 10.

III. THE TRIAL COURT ABUSED ITS DISCRETION AND PREJUDICED APPELLANT'S SUBSTANTIAL RIGHTS WHEN IT ORDERED HIM TO PAY ALL OF THE COSTS OF HIS COURT-APPOINTED COUNSEL WITHOUT DETERMINING THAT APPELLANT, WHO WAS DETERMINED TO BE INDIGENT, HAD THE FINANCIAL WHEREWITHAL TO PAY PART OR ALL OF THE COSTS OF HIS

REPRESENTATION AND WITHOUT ADVISING HIM OF THE REIMBURSEMENT ORDER ON THE RECORD AT THE SENTENCING HEARING.

IV. THE TRIAL COURT ABUSED ITS DISCRETION AND PREJUDICED APPELLANT'S SUBSTANTIAL RIGHTS WHEN IT ORDERED HIM TO PAY UNAUTHORIZED COURT COSTS AND FEES.

I.

**{¶12}** In his first assignment of error, Appellant argues the court abused its discretion in allowing the State to impeach its own witness, Miranda Linn, with her prior written statements to police without first demonstrating affirmative damage and surprise as required by Evid. R. 607(A).

**{¶13}** At trial, Miranda denied Appellant hit her in the parking lot of the bar. When asked on direct examination if she gave a statement to the police, she testified she kept trying to tell police Appellant didn't hit her, but it wasn't what the police officer wished to hear, so he kept "going and going and going." Tr. 155. She finally agreed to go to the police station upon the officer's promise to take her home from there. When asked if she told the officer Appellant hit her, she testified, "No, I wrote down what the ladies saw. Said they saw – whatever. No one seemed to believe me through the whole thing." Tr. 155-56. She admitted she made a written statement. Appellant objected when the State attempted to question her concerning what she wrote in her prior statement.

**{¶14}** The prosecutor then asked Miranda if her recollection would be refreshed if he showed her the written statement. When Appellant again objected, the court stated

the witness appeared to be a hostile witness, and so the State could impeach her with her prior statement.  Miranda then testified she didn't need to see the statement because she remembered writing Appellant hit her, but he did not hit her.

{¶15}  Evid. R. 607(A) provides:

**(A) Who May Impeach.** The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803.

{¶16}  Evid. R. 607 requires a showing of surprise and affirmative damage before the court is authorized to declare a witness hostile. *State v. Holmes*, 30 Ohio St.3d 20, 23, 506 N.E.2d 204, 207(1987). Surprise can be shown if the testimony is materially inconsistent with the prior written or oral statement and counsel did not have reason to believe that the witness would recant when called to testify.  *Id.*

{¶17}  The State did not demonstrate surprise and affirmative damage before the trial court declared Miranda Linn to be a hostile witness.  In fact, it appears from the record the State could not demonstrate surprise.  Prior to the start of trial, counsel for Appellant stated without correction from the State:

I also would point out to the Court, and I know the State's aware that she's provided in writing basically a different version or recanting some of the statements made to police, or that she has expressed that she was coerced in some ways.

**{¶18}** Tr. 9.

**{¶19}** The State does not argue surprise in Miranda's trial testimony, but rather argues it was not required to demonstrate surprise.

**{¶20}** We therefore find the court erred in declaring Miranda Linn to be a hostile witness and allowing the State to impeach her by using her prior written statement.

**{¶21}** The State argues the written statement concerning the incident at the bar was used to refresh her recollection pursuant to Evid. R. 803(5), and therefore falls within the exception to Evid. R. 607.  Evid. R. 803(5)  provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(5) **Recorded Recollection**. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

{¶22} The statement as to being hit by Appellant was not used to refresh Miranda Linn's recollection. She had not forgotten what she wrote in the statement, but rather testified she simply wrote in the statement what the women who had reported the incident claimed to have seen. The witness did not have insufficient recollection to testify fully and accurately; rather, at trial she claimed the statement was untrue at the time. Therefore, Evid. R. 803(5) does not apply.

{¶23} The State argues the statement was not used to impeach her testimony, but rather was used to explain the actions of police. We disagree. The witness who claimed to have seen Appellant hit Miranda while she was sitting on the patio of Kintz's bar testified, as did the bartender. Their testimony was sufficient to explain the actions of police on the night in question. The reason for the actions of the police cannot be used to circumvent Evid. R. 607(A) under this scenario.

{¶24} The prior inconsistent statement was clearly used by the State to impeach Miranda's testimony Appellant did not hit her, which falls squarely within Evid. R. 607(A).

{¶25} We therefore find the court erred in declaring Miranda Linn a hostile witness, as the State could make no showing of surprise by her testimony, and the court erred in allowing the State to use her prior written statement concerning being struck by Appellant to impeach its own witness.

{¶26} However, we find Appellant has not demonstrated prejudice as a result of the use of her prior written statement concerning the physical assault in the parking lot of Kintz's bar to impeach her testimony, as error in the admission of the evidence is harmless. Miranda's prior written statement which stated Appellant hit her in the parking

lot of Kintz's bar related to the charge of domestic violence. Because Appellant was acquitted of this charge, he cannot demonstrate prejudice.

**{¶27}** Later, when questioning Miranda concerning the incident in which she called 911 to report Appellant had threatened her with a knife, Miranda testified she did not remember writing a statement about this incident. After reviewing the statement, and admitting it was in her handwriting, Miranda testified:

A. I don't even remember this. I was drinking, dude. I don't – I talked to like a hundred people. I don't know what you want me to say.

Q. I'm just asking you if you told the deputies that he threatened –

A. I told you he was ranting and raving with a knife, and I ran out the back door.

Q. Did he threaten to gut you like a deer?

A. I don't remember that.

Q. Now that you've read this that you made that night, did he threatened to gut you like a deer?

A. I don't even remember writing that. Like – I was high.

Q. Were you high?

A. At the time, yeah.

**{¶28}** Tr. 162.

**{¶29}** We find this statement falls within the Evid. R. 803(5) exception found in Evid. R. 607(A). She testified she did not remember Appellant threatened to gut her like

a deer, and testified she did not remember writing a statement. We therefore find no error in the use of the written statement to refresh her recollection concerning Appellant's actions leading to her 911 call.

**{¶30}** The first assignment of error is overruled.

II.

**{¶31}** In his second assignment of error, Appellant argues the court erred in allowing the arresting officer to comment on Appellant's invocation of his right to remain silent, and his refusal to speak with police following his arrest.

**{¶32}** Delaware police officer Dylan Griffin testified he attempted to question Appellant. Appellant objected, and a sidebar conversation ensued. The trial court overruled Appellant's objection. The State then asked Officer Griffin if Appellant made a statement after his arrest. Officer Griffin responded, "No, sir, he wouldn't make a statement to me." Tr. 247.

**{¶33}** "[A] prosecutor can refer to a defendant's silence if doing so would be a fair reply to a defense theory or argument, for example, when defense counsel asserts that the government did not give his client an opportunity to tell his side of the story." *Hall v. Vasbinder*, 563 F.3d 222, 233 (6th Cir. 2009).

**{¶34}** Prior to Officer Griffin taking the stand, Appellant raised a theory or argument police failed to seek out Appellant's side of the story. During opening statement, counsel for Appellant argued:

> The State of Ohio certainly knew where Scott was, and could of contacted him and talked to him. Didn't. Didn't get the other side of the

story.  Didn't get the other perspective.  But rather talked to the individuals, as discussed, and went – got a warrant, and had someone arrested.

**{¶35}** Tr. 91.

**{¶36}** Further, prior to Officer Griffin's testimony, Appellant cross-examined Officer Robin Valentine concerning whether she called Appellant to get his side of the story.  Tr. 197.  Likewise, Appellant cross-examined Deputy Marc Rospert concerning whether he tried to contact Appellant.  Tr. 224-225.  Officer Griffin's brief comment Appellant would not make a statement was a fair reply to the defense argument police did not give Appellant an opportunity to tell his side of the story.

**{¶37}** The second assignment of error is overruled.

III.

**{¶38}** In his third assignment of error, Appellant argues the court erred in ordering him to pay all of the cost of his court-appointed counsel without determining his ability to pay, and without advising him on the record he would be required to pay at sentencing.

**{¶39}** Pursuant to R.C. 2947.23, the trial court is required to impose the costs of prosecution against all convicted defendants, regardless of whether the defendant is deemed indigent.  However, the court has jurisdiction at sentencing or any time thereafter to waive, suspend, or modify payment of costs.  R.C. 2947.23(C).

**{¶40}** A court may order a felony offender to pay a financial sanction, such as restitution or a fine, as a part of the sentence.  R.C. 2929.18.  Before imposing financial sanctions, the court is required to consider the defendant's present and future ability to pay.  R.C. 2929.19(B)(5).

**{¶41}** Separate and apart from court costs and financial sanctions, a court may require a defendant to pay all or part of the costs of his or her court-appointed counsel pursuant to R.C. 2941.51(D):

The fees and expenses approved by the court under this section shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay. Pursuant to section 120.04 of the Revised Code, the county shall pay to the state public defender a percentage of the payment received from the person in an amount proportionate to the percentage of the costs of the person's case that were paid to the county by the state public defender pursuant to this section. The money paid to the state public defender shall be credited to the client payment fund created pursuant to division (B)(5) of section 120.04 of the Revised Code.

**{¶42}** Appellant relies on *State v. Taylor,* 2nd Dist. Montgomery No. 27700, 117 N.E.3d 887, 2018-Ohio-2858, which holds in pertinent part:

It is not the defendant's burden to show that he has the means to pay court-appointed counsel fees. Absent a contrary determination by the court,

the mandate of the statute is that appointed counsel's fees are paid by the county. Stated simply, counsel's fees are paid by the county unless evidence shows that he or she is able to pay.

To properly impose court-appointed counsel fees, the trial court must (1) consider the defendant's ability-to-pay and the amount thereof, and (2) notify the defendant of the imposition of court-appointed counsel fees at sentencing. *Shirk* at ¶ 9; *Springs* at ¶ 10. "[A] trial court errs when it orders a defendant to pay court-appointed counsel fees without notifying the defendant of that requirement at sentencing and determining the defendant's ability to pay those fees." (Citation omitted.) *State v. Mitchell*, 2d Dist. Clark No. 2014-CA-108, 2016-Ohio-1422, 2016 WL 1291704, ¶ 24.

As stated above, R.C. 2941.51(D) specifically provides that court-appointed counsel fees shall be paid by the county. Accordingly, there is a statutory presumption that the county will pay appointed counsel's fees and expenses, unless there is a finding that the defendant has or reasonably may be expected to have the means to pay some or all of the costs of his or her legal representation. Given this presumption, we conclude that, prior to imposing court-appointed counsel fees, the trial court must make an explicit finding that a defendant has or reasonably may be expected to have the means to pay some or all of the cost of his or her legal representation. In addition, the trial court is required to specify the amount of appointed-counsel fees that a defendant can or reasonably may be expected to pay.

**{¶43}** *Id.* at ¶¶13-14, 21, motion to certify allowed, 154 Ohio St.3d 1421, 2018-Ohio-4495, 111 N.E.3d 19, ¶ 21 (2018), and appeal allowed, 154 Ohio St.3d 1421, 2018-Ohio-4495, 111 N.E.3d 20, ¶ 21 (2018).

**{¶44}** We agree with the reasoning of the Second District in *Taylor,* and we find to impose court-appointed counsel fees, the trial court must notify the defendant of such requirement at sentencing, make an explicit finding the defendant has or reasonably may be expected to have the means to pay, and specify the amount of appointed-counsel fees the defendant can or reasonably may be expected to pay.

**{¶45}** At the sentencing hearing, the trial court stated:

Court has considered your present and future ability to pay financial sanctions, does not impose a fine in this case, but you are ordered to pay all of the costs of prosecution for which judgement's [sic] granted against you and execution is hereby awarded.[1]

**{¶46}** Sent. Tr. 16.

**{¶47}** In the sentencing entry, the court stated:

The Court finds the defendant is able to work and is therefore Ordered to pay all prosecution costs, court appointed counsel costs and any

---

[1] We presume the trial court's reference to "all of the costs of prosecution" was made pursuant to R.C. 2947.23 and not R.C. 2941.51(D), which separately and specifically deals with appointed counsel fees.

fees permitted pursuant to R.C. 2929.18(A)(4), for which all sums, judgment is hereby rendered. No fine is imposed.[2]

**{¶48}** The trial court did not notify Appellant at sentencing he would or could be required to pay court-appointed counsel fees, did not make an explicit finding Appellant has or reasonably may be expected to have the means to pay court-appointed counsel fees pursuant to R.C. 2941.51(D), and did not specify the amount of appointed-counsel fees Appellant can or reasonably may be expected to pay. We therefore find the court erred in ordering Appellant to pay court-appointed counsel fees.

**{¶49}** The third assignment of error is sustained.

IV.

**{¶50}** In his fourth assignment of error, Appellant argues the court erred in requiring him to pay unauthorized costs.

**{¶51}** Appellant first argues his cost bill[3] improperly orders him to pay $3.00 per page for document filing. R.C. 2303.20(F) allows the clerk of the common pleas court to charge $2.00 per page for entering on the journal, indexing, and posting on the docket. R.C. 2303.201(B)(1) allows the clerk of courts to charge an additional fee of up to one dollar for the services described in R.C. 2303.20(F). The two dollars imposed pursuant to R.C. 2303.20(F), added to the additional one dollar charged pursuant to R.C. 2303.201(B)(1), totals the $3.00 per page Appellant was legally charged on his itemized bill.

---

[2] We find it somewhat facially inconsistent to find Appellant had the ability to pay all prosecution costs yet not impose a fine.

[3] On March 11, 2019, this Court granted Appellant's motion to supplement the record with the itemized cost bill he received in the instant case pursuant to the trial court's order to pay court costs.

**{¶52}** Appellant next argues the bill reflects "bogus" mileage for serving subpoenas on deputies and a mileage fee for serving Appellant with a warrant when he was in custody at the jail and no mileage was involved. R.C. provides the sheriff may charge "[o]n each summons, writ, order, or notice, a fee of two dollars per mile for the first mile, and one dollar per mile for each additional mile, going and returning, actual mileage to be charged on each additional name." The subpoenas and the warrant reflect the address where they are to be served, but do not reflect whether the deputy serving the subpoenas and warrant had to travel to serve them. The State argues service required traveling between two separate facilities, separated by 3.4 miles. There is nothing in the record to indicate whether travel was or was not required for service. We find Appellant's claim the mileage was fabricated is unsupported by the record.

**{¶53}** Appellant lastly argues the itemized bill improperly orders him to pay court-appointed counsel costs of $2,000. For the reasons stated in our discussion of Appellant's third assignment of error, we agree.

**{¶54}** Appellant's fourth assignment of error is overruled as to charges for documents and mileage, but sustained as to the charge for court-appointed counsel fees.

{¶55}  The judgment of the Delaware County Common Pleas Court is affirmed in all respects except for the order to pay court-appointed counsel fees.  The order requiring Appellant to pay court-appointed counsel fees in the amount of $2,000 is vacated.


By: Hoffman, J.
Gwin, P.J.  and
Delaney, J. concur